# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CINDY KAY MAIER,

       Plaintiff/Counter Defendant-
Appellant,

v

DANIEL CLAYTON MAIER,

       Defendant/Counter Plaintiff-
Appellee.

FOR PUBLICATION
June 25, 2015
9:00 a.m.

No. 322109
Clinton Circuit Court
Family Division
LC No. 11-023267-DM

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order awarding defendant sole physical and legal custody of the parties' son, JM. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and defendant married in 2002, and JM was born three years later. A little over a year after JM was born the parties separated, but did not finally divorce until 2012. Custody issues arose during the pendency of the divorce proceedings and resumed within months of the entry of a judgment of divorce. In addition to the multiple show cause hearings filed with the court, the parties were also involved in several Children's Protective Services (CPS) investigations instigated by plaintiff. Each report was found unsubstantiated by CPS. In 2013, a petition to change custody was filed in conjunction with a motion to show cause. The court conducted an evidentiary hearing on the custody petition which spanned four months and included seven days of testimony and argument. At the close of those proceedings, the trial judge entered an order granting defendant sole legal and physical custody of the parties' nine-year-old and granting the plaintiff unsupervised visitation with a standard visitation schedule. After a cacophonous initial visitation between JM and plaintiff, the court modified its order on May 22, 2014, to require that plaintiff's visitation be supervised until and unless a psychological evaluation recommended otherwise. It is from that order that plaintiff appeals.

## II. STANDARD OF REVIEW

We review a trial court's fact finding to determine if it is against the great weight of the evidence. *Pierron v Pierron,* 486 Mich 81, 85; 782 NW2d 480 (2010). A trial court's determination on the issue of custody is reviewed for an abuse of discretion. *Shulick v Richards*, 273 Mich App 320, 323; 729 NW2d 533 (2006). In child custody cases, an abuse of discretion occurs if "the result [is] so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id.* at 324 (citation omitted).

Plaintiff asks this Court to reconsider our decision in *Shulick v Richards*, 273 Mich App 320, where we determined that the above articulation of the "abuse of discretion" standard remained the proper standard in child custody cases in light of the Supreme Court's decision in *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006), that a different articulation, the "principled outcomes" standard, was the "default abuse of discretion standard." *Shulick,* 273 Mich App at 323-324. We decline. This Court's definition of abuse of discretion derives from the Supreme Court's ruling in another child custody case, *Spalding v Spalding*, 355 Mich 382, 384; 94 NW2d 810 (1959). *Shulick.* 273 Mich App at 324-325. While *Maldonado* articulated a general "default" definition of abuse of discretion, it was *Spalding* that addressed the term within the specific context of child custody. "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals . . . that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals." MCR 7.215(J)(1).

In *Fletcher v Fletcher*, 447 Mich 871, 876; 526 NW2d 889 (1994), the Supreme Court stated that because the Legislature used the word "palpable" in the Child Custody Act, MCL 722.21 *et seq.*,[1] the same word the Court had used in *Spalding*, that it must have meant to adopt the definition of "abuse of discretion" that was articulated in *Spalding*. *Id*. at 879-880. This Court is bound to follow the precedent of the Supreme Court. See *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009)

## III. ANALYSIS

### A. THE TRIAL COURT'S CUSTODY DETERMINATION

Plaintiff argues that the trial court's custody determination was erroneous for numerous reasons. She argues that the court erred in failing to consider the reasonable preference of the

---

[1] Section 28 of the Child Custody Act, MCL 722.21 *et seq.*, states:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

child. She asserts that the court erred in both deciding custody prior to the plaintiff's psychological evaluation and in using the plaintiff's failure to obtain such an evaluation as evidence in the court's custody decision. Finally she contends that the court was biased against her.

1) Reasonable Preference of the Child

Plaintiff's first claim of error is that the court failed to consider the reasonable preference of the minor child without conducting an interview of JM. Plaintiff asks this Court to find that the recent case of *Kubicki v Sharpe*, 306 Mich App 525; 858 NW2d 57 (2014), requires that a trial court conduct an interview of the child in all but the most extraordinary of circumstances. In *Kubicki*, the Court stated, "[r]egardless whether the parties wished for an interview, the court was affirmatively required to consider the child's preference." 306 Mich App at 544-545. In the instant case, the trial court declined to interview the minor. In doing so the court stated:

> The reasonable preference of the child if the Court considers the child to be of sufficient age to express a preference. [JM] turned nine during these proceedings. Neither party asked that he be interviewed. He suffers from anxiety and adjustment disorder and has been subjected to various evaluations and counseling appointments. There is a concern he struggles with ADHD. He has been exposed to inappropriate and inaccurate information and there are concerns which I will expand on later that [JM] has been coached. It is unlikely even if he were interviewed that he would be able to express a reasonable preference[.]"

*Kubicki* did not announce a new legal mandate that every child over a certain age be interviewed to ascertain a reasonable preference. Following a long line of cases, *Kubicki* highlighted the standing principle that a court may not abrogate its responsibility to consider each of the enumerated best interests child custody factors based upon a stipulation of the adults in a case.[2] The right to have a reasonable preference considered attaches to the best interests of the minor, not to the rights of the contestant's in the custody battle. The term reasonable preference has been defined by this court as a standard that "exclude(s) those preferences that are arbitrary or inherently indefensible." *Pierron v Pierron*, 282 Mich App 222, 259; 765 NW2d 345 (2009) as cited in *Pierron*, 486 Mich at 92. The Child Custody Act requires that the court consider that reasonable preference of the minor, if one exists. MCL 722.23(i). A preliminary question is always whether the child has the capacity to formulate a reasonable preference and if so, has the child actually formulated a preference. A child over the age of six is presumed to be capable of formulating a reasonable preference. *Bowers v Bowers*, 190 Mich App 51, 55-56; 475 NW2d 394 (1991). Undoubtedly, "an expression of preference by an intelligent, unbiased child might be the determining factor in deciding what the 'best interests' of the child are." *In re Custody of James B*, 66 Mich App 133, 134; 238 NW2d 550 (1975); See also *Lewis v Lewis*, 73

---

[2] See *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001); *Bowers v Bowers*, 190 Mich App 51, 55; 475 NW2d 394 (1991); *Daniels v Daniels*, 165 Mich App 726, 730; 418 NW2d 924 (1988); *Arndt v Kasem*, 135 Mich App 252, 255; 353 NW2d 497 (1984); *Speers v Speers*, 108 Mich App 543, 545; 310 NW2d 455 (1981); *Dowd v Dowd*, 97 Mich App 276, 278-279; 293 NW2d 797 (1980); *Troxler v Troxler*, 87 Mich App 520, 523; 274 NW2d 835 (1978).

Mich App 563, 566; 252 NW2d 237 (1977), and *Bowers*, 190 Mich App at 56.  However, no court has ruled that every child over age six actually has the capacity to formulate such a preference.  Just as adults may lack the capacity to give competent testimony based upon infirmity, disability or other circumstances, so may a child's presumed capacity be compromised by circumstances peculiar to that child's life.  Additionally, an interview is merely one avenue from which to adduce a minor's capacity for preference and the preference itself, and not the *sine qua non* from which such determination may be made.  Trial judges, learned in the law, are not necessarily the best persons to approach a minor on this issue.  Just as a protocol has been developed for interviewing child assault victims, this issue may well be best addressed with the development of an evidence based protocol for interviewers seeking to ascertain a child's preference for custody.  Additionally, it is not uncommon for children in the midst of family reorganization to be under the care of trained mental health care professionals from whom the trial judge can seek input on many of the best interest's factors including preference.

In this case the trial judge did not interview the minor, but did make an implicit fact-finding that this particular child could not formulate or express a reasonable preference, one that was not based upon the inherently indefensible basis of coaching and emotional distress.  In making this fact-finding, the court had before it a record that included the child's diagnosis of both depressive disorder and ADHD.  Additionally, the record contained evidence of four unsubstantiated CPS complaints, testimony from therapists who opined that the minor was being coached and a traumatic visitation exchange that the minor perceived to be a kidnapping.  Additionally, more than one witness also, testified that plaintiff voiced concerns and criticisms of defendant in the child's presence.  Thus, the court found that while JM was of sufficient age to be able to form and express a preference, his fragile emotional state, coupled with significant efforts to influence his preference, rendered him unable at the time to form a reasonable preference.  Clearly, the court fulfilled its statutory duty.  The court's fact-finding was supported by the record and is affirmed.

2) Psychological Evaluation

Next, plaintiff argues that the trial court abused its discretion by reaching a custody decision without considering her psychological evaluation.  We disagree.  Our decision in *McIntosh v McIntosh*, 282 Mich App 471, 472; 768 NW2d 325 (2009), makes it clear that the failure to consider a psychological evaluation cannot be the sole basis for overturning a trial court's decision on custody.  In *McIntosh*, this Court held that psychological evaluations "are but one piece of evidence amongst many, and are not by themselves dispositive in determining custody."  *Id*.  We explained that "psychological evaluations are not conclusive on any one issue or child custody factor," and that "[t]he ultimate resolution of any child custody dispute rests with the trial court."  *Id*. at 475.  Moreover, in evaluating the child custody factors the trial court can consider the relative weight of the factors and is not required to give them equal weight. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

3) Failure to Abide By Court Orders

Plaintiff also argues that the court erred in its consideration of her repeated failure to abide by court orders to obtain a psychological evaluation.  The trial court determined that plaintiff's inability to have a psychological evaluation as ordered weighed against her on two

best-interest factors: MCL 722.23, factor (f) (mental and physical health of the parties) and factor (*l*) (any other factor). The trial court erred in its evaluation of these two factors according to our holding in *Adams v Adams*, 100 Mich App 1, 13; 298 NW2d 871 (1980) ("Disputes regarding visitation and contempt are not a proper basis for changing custody."). However, the error is harmless. Four factors favored defendant without any indication of error, and none favored plaintiff. In order for plaintiff to show that she should have been awarded custody, it is not only necessary for her to show that the trial court erred on some of the factors that favored defendant, but also that some of the factors favored her. See *Dempsey v Dempsey*, 409 Mich 495, 498-499; 296 NW2d 813 (1980).

### 4) Bias

Plaintiff also argues that the trial court treated her unfairly by precluding hearsay testimony from her witnesses, but not from defendant's witnesses. In support of this argument, plaintiff offered several citations where the court allowed the defendant to testify to out of court statements by plaintiff which she erroneously refers to as inadmissible hearsay. These statements were not hearsay. MRE 801(d) (2). She also relies upon a single instance where the trial court allowed defendant to testify to a statement JM made which was hearsay. Even assuming this admission was erroneous plaintiff has not shown that the actions of the trial court rose to a level of bias.

## B. THE TRIAL COURT'S PARENTING-TIME DETERMINATION

"Parenting time shall be granted in accordance with the best interests of the child." MCL 722.27a(1). A trial court should grant parenting time "in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." *Id.* The following factors can be considered:

(a) The existence of any special circumstances or needs of the child.

(b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

(c) The reasonable likelihood of abuse or neglect of the child during parenting time.

(d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

(e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

(f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

(g) Whether a parent has frequently failed to exercise reasonable parenting time. [MCL 722.27a (6).]

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 32; 805 NW2d 1 (2010) (quotation omitted). The trial court must consider the best interests of the child even if it does not specifically address the statutory factors. *Id*. at 31-32. The parenting time order here was changed after an emergency hearing and only a week after the court's initial ruling granting unsupervised visitation. While the trial court did not explicitly go through all the factors in MCL 722.27a(6), it did state that it reviewed and considered them.

The trial court was reasonably concerned about the status of JM's mental and emotional health when around plaintiff. In addition to the dense record that the court had from the protracted custody hearing, the court received testimony at the emergency hearing regarding plaintiff's behavior since JM had moved to defendant's home. Plaintiff admitted sending texts to defendant threatening to terminate all insurance for the benefit of JM. Plaintiff also admitted sending a letter to JM telling him that defendant's home was a temporary place for him. There was evidence that plaintiff told JM's coach's wife that defendant was physically abusive of JM, similar to her four previous claims of abuse to CPS. The court stated "plaintiff cannot separate her own emotional distress and anxiety from her son's, cannot act in a manner that's in his best interest, at this time, and is, clearly, trying to undermine the defendant as a parent." The record supports this conclusion. The trial court's grant of parenting time was in accordance with JM's best interests.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens