# STATE OF MICHIGAN

# COURT OF APPEALS

EDWARD JOHN GUYETTE, II,

Plaintiff-Appellant,

v

KATHLEEN ISABEL CORNELL,

Defendant-Appellee.

UNPUBLISHED
October 23, 2018

No. 343869
Cheboygan Circuit Court
Family Division
LC No. 17-012289-DP

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Plaintiff-father, Edward John Guyette, II, appeals by right the trial court's order awarding defendant-mother, Kathleen Isabel Cornell, sole physical custody of the parties' minor children, EG and LG. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff and defendant met sometime in 2008 or 2009 in Cheboygan, Michigan, and began cohabitating in approximately 2011. In March 2013, shortly after EG was born, plaintiff and defendant separated. Despite the separation, plaintiff and defendant continued to see each other periodically until LG was born in 2014. Between March 2013 and the fall of 2015, plaintiff did not have stable housing; he stayed with friends and family and "couch-surfed." In the fall of 2015, plaintiff moved downstate to Sterling Heights to live with his new girlfriend. Plaintiff lived in his girlfriend's apartment, which she was renting while she attended cosmetology school. In approximately May 2016, after the girlfriend graduated, she and plaintiff moved to Farmington Hills. EG suffered third-degree burns on September 3, 2017, when he fell into a fire pit while at defendant's mother's house. Sometime after this accident in September 2017, plaintiff moved back to Cheboygan joined by his girlfriend.

After the burn accident, LG was enrolled in preschool in Cheboygan. However, after the first few days of school, defendant removed LG for fear that plaintiff would take LG away. Plaintiff alleged that, after removing LG, defendant cut off contact between plaintiff and the children and between herself and plaintiff. As a result, on October 2, 2017, plaintiff filed a complaint asking the trial court to find that he is the legal father of the children and to enter an interim custody and parenting-time order. Plaintiff sought sole physical custody of the children. On October 18, 2017, the trial court issued a temporary custody order, granting plaintiff standard parenting time every other weekend and every other holiday and referring the custody matter for a hearing before a domestic relations referee.

-1-

The referee subsequently conducted a hearing and recommended that the parties be awarded joint legal custody and that defendant be awarded sole physical custody. Plaintiff objected to the referee's recommendation, and the trial court conducted a de novo hearing on April 18, 2018. On April 25, 2018, the trial court issued a written opinion and order, denying plaintiff's request for physical custody, granting defendant sole physical custody of the minor children, giving plaintiff standard parenting time, and awarding the parties joint legal custody.

## II. ANALYSIS

Plaintiff contends that the trial court erred by finding that there was an established custodial environment with defendant and that the court therefore applied the wrong standard of proof in making its custody determination. Additionally, plaintiff maintains that the trial court erred in its application of the statutory best-interest factors set forth in MCL 722.23. We disagree.

## A. STANDARD OF REVIEW

In *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006), this Court, relying primarily on MCL 722.28, addressed the standards of review in child custody cases, observing:

> There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction. In reviewing the findings, this Court defers to the trial court's determination of credibility. A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. Further, pursuant to MCL 722.28, questions of law in custody cases are reviewed for clear legal error. [Citations and quotation marks omitted.[1]]

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "When resolving important decisions that affect the welfare of the child, the court must first

---

[1] In the context of a child custody case, an abuse of discretion occurs if the result is so grossly and palpably violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of reason but rather of passion or bias, and not the exercise of judgment but defiance thereof. *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015).

consider whether the proposed change would modify the established custodial environment." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). MCL 722.27(1)(c) provides, in part:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [See also *Pierron*, 486 Mich at 85-86.]

In this case, the trial court's factual determinations were well supported by the record. Plaintiff and defendant's relationship was intermittent for much of the children's early lives. Plaintiff himself testified that, early on, he was not heavily involved with the children, he "couch-surfed" with friends and family for approximately two years, and he did not have stable housing. Therefore, during that early period, the children lived exclusively with defendant and spent the majority of their time in her care. Defendant testified that, after EG was born and even before she and plaintiff had separated, she was the primary caregiver for EG. She explained that plaintiff was not around "most of [the] time" but was instead often with friends, that he barely helped care for EG, and that he did not work and hardly supported the family financially. Additionally, when plaintiff lived downstate from the fall of 2015 to September 2017, he essentially exercised standard parenting time. He had the children on every other weekend, every other holiday, and partially for summer vacations. After the temporary custody order was instituted, plaintiff continued to exercise standard parenting time. In its opinion and order, the trial court observed that defendant "has been there consistently for the boys and provided consistently for their needs." The record supports this finding.

On the existing record, the children primarily resided with defendant and she was the parent to whom the children most naturally looked to for "guidance, discipline, the necessities of life, and parental comfort." See MCL 722.27(1)(c). Therefore, the trial court's finding that the established custodial environment was with defendant was not against the great weight of the evidence.[2] Accordingly, to succeed on his motion, plaintiff was required to prove, by clear and convincing evidence, that it was in the best interests of the children to award him custody. MCL 722.27(1)(c). Thus, the trial court did not err in imposing the heightened burden of proof.

---

[2] Plaintiff argues that he had the children for the entire summer in 2017, shortly before he filed his filiation and custody motion; however, defendant testified that plaintiff was supposed to have the children for only half the summer and that he ignored her efforts to contact him. According to defendant, when plaintiff finally responded, he told her, "Well, you've had them for the last four years; now it's my turn and I'm going to enroll them in school down here, and you can just 'f' off." We note that the record is replete with immature, offensive, and questionable behavior by plaintiff. Indeed, in the trial court's opinion, it warned that the issue of joint *legal* custody was close and would end "[i]f any further abusive communications or threatening behaviors occur[red.]"

## C. BEST-INTEREST FACTORS

In *McRoberts v Ferguson*, 322 Mich App 125, 134; 910 NW2d 721 (2017), this Court observed:

> In this case, the trial court found that an established custodial environment existed with plaintiff and therefore correctly concluded that defendant had the burden of proving by clear and convincing evidence that modifying the custodial environment was in the child's best interests. MCL 722.23 defines the best interests of the child as the sum total of the factors set forth in MCL 722.23(a)-(*l*), which are to be considered, evaluated, and determined by the court. In child custody cases, the family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them. This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors. [Citations, quotation marks, and ellipsis omitted.]

In this case, the trial court found that six of the factors—MCL 722.23(a), (c), (d), (h), (k), and (*l*)—favored defendant, while the rest—MCL 722.23(b), (e), (f), (g), (i), (j)—favored neither party. Plaintiff asserts that the trial court should have found that seven of the factors favored him and that five were neutral. We conclude that the evidence did not clearly preponderate against the trial court's findings on the statutory best-interest factors. *McRoberts*, 322 Mich App at 135. And the evidence fell woefully short of proving by clear and convincing evidence that physical custody of the children should be awarded to plaintiff.

MCL 722.23(a) concerns "[t]he love, affection, and other emotional ties existing between the parties involved and the child." The trial court found that this factor slightly favored defendant by virtue of the fact that the children spent considerably more time with defendant than with plaintiff. As previously discussed, the record adequately supported the finding that the children resided primarily with defendant and looked to her as their day-to-day caregiver and to meet their emotional needs. In contrast, plaintiff was not involved much during the children's early years, and, during the later years, while plaintiff became more involved, the children continued to look to defendant for love and affection. The trial court's ruling was not against the great weight of the evidence.

MCL 7.22.23(b) regards "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." The trial court found that this factor favored neither plaintiff nor defendant, and plaintiff does not challenge this finding on appeal.

MCL 722.23(c) addresses "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." The trial court found that this factor favored defendant because defendant's work history was far more stable and extended. Plaintiff argues that this factor should have favored him given that he had his own contracting company, worked for his girlfriend's grandfather, and had excellent medical coverage through his tribal affiliation. The trial court, however, found that plaintiff's

work history was "somewhat sketchy," inconsistent, and unstable, and we agree with this assessment. Defendant testified that she had worked when the children were first born and that she had worked for three years as a waitress, earning $14,000 in 2017. Plaintiff did not refute this evidence. In contrast, the record revealed that plaintiff barely worked until late 2016, hardly supported defendant or the children financially, failed to pay child support, and had only recently started his own contracting business doing general labor. Plaintiff's main client was his girlfriend's grandfather, and there was no indication that plaintiff had other clients. The record also shows that plaintiff had no health issues preventing him from working. The trial court's finding on factor (c) was not against the great weight of the evidence.

MCL 722.23(d) regards "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The trial court found that this factor favored defendant because the children had resided in their current living situation for approximately one year, whereas plaintiff had moved a couple of times during that same period. Defendant testified that she was living in a house with her boyfriend, his mother, and the parties' children. This home was leased, and defendant had been living there for almost one year. There was no indication that defendant had lived anywhere except in, or at least very close to, Cheboygan County. In contrast, the record showed that plaintiff had "couch-surfed" for approximately two years, had moved several times between 2015 and 2017, and had just recently leased his current residence. This evidence reflected that the children had lived in a more stable and satisfactory environment with defendant and that this continuity favored defendant. The trial court's finding on factor (d) was not against the great weight of the evidence.

MCL 722.23(e) concerns "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." The trial court found that this factor favored neither party because plaintiff and defendant had been living with their respective significant others for long periods of time. Plaintiff appears to argue that because defendant lived with her boyfriend *and* his mother, this diminished defendant's situation to such a degree that the factor should have favored plaintiff. However, plaintiff presents no support for this position, and we find it to be meritless. The trial court's finding on factor (e) was not against the great weight of the evidence.

MCL 722.23(f) addresses "[t]he moral fitness of the parties involved." The trial court found that this factor favored neither plaintiff nor defendant. Plaintiff argues that this factor should have favored him because, while he presented evidence that he did not drink or smoke his medicinal marijuana in front of the children, there was evidence that defendant and her boyfriend had once smoked recreational marijuana while the children were in the home. Although the trial court did not explicitly articulate its findings, it can be inferred that the trial court did not find the evidence cited by plaintiff to be dispositive regarding the parties' moral fitness. The trial court's finding on factor (f) was not against the great weight of the evidence.

MCL 722.23(h)[3] regards "[t]he home, school, and community record of the child." The trial court found that this factor favored defendant because she had made all the arrangements to enroll the children in their preschool program. Plaintiff testified that he had only limited contact

---

[3] Plaintiff does not challenge the trial court's ruling under MCL 722.23(g).

with the children's teachers. Given that defendant was the children's primary caregiver and arranged for their schooling, and considering plaintiff's admitted minimal involvement in the children's education, the trial court's finding on factor (h) was not against the great weight of the evidence.

MCL 722.23(j)[4] concerns "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." The trial court found that this factor favored neither plaintiff nor defendant because, in spite of the dysfunctional relationship between the two, they had mostly managed to successfully maintain plaintiff's standard parenting-time schedule from a long distance.

Plaintiff points to his Exhibit A, which contained text messages between himself and defendant allegedly showing that defendant often refused to respond to his messages. Plaintiff also notes that defendant did not contact him about EG's burn accident until five days after it occurred. However, plaintiff mainly enjoyed standard parenting time, and plaintiff presented no evidence to show that defendant had interfered with plaintiff's parenting time. Plaintiff's evidence merely revealed tension and distrust between the parties, and not that defendant was attempting to undermine plaintiff's relationship with the children. The trial court's finding on factor (j) was not against the great weight of the evidence.

MCL 722.23(k) addresses "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." The trial court ruled that this factor favored defendant because the court found credible defendant's testimony regarding one specific incident of domestic violence. Defendant testified that plaintiff "would get angry and punch holes in the walls or come home and flip tables and put holes in the ceiling, bust lights." She also testified that plaintiff had assaulted her once, and she vividly described the occurrence, which included plaintiff grabbing her by the throat, picking her up, flipping her around, slamming her to the ground, holding her throat to the ground, and threatening to "f**king kill" her. Plaintiff himself admitted that when he and defendant had lived together he sometimes punched the walls in anger. It is true, as plaintiff notes, that other witnesses testified that they had never observed incidents of anger or domestic violence perpetrated by plaintiff. However, this does not mean that plaintiff had not engaged in violent behavior with defendant, and we defer to the trial court with respect to witness credibility. The trial court's finding on factor (k) was not against the great weight of the evidence.

MCL 722.23(l) regards "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." The trial court found that this factor favored defendant for a number of reasons. First, the trial court found it concerning that plaintiff, although healthy with no physical limitations, received little to no earnings from 2014 to 2016. The trial court further found that failing to provide any financial support to the family was indicative of a lack of parental commitment to the children's welfare. The trial court also found that plaintiff may have failed to disclose income because doing so was inconsistent with tax filings.

---

[4] Plaintiff does not challenge the trial court's finding in regard to MCL 722.23(i).

Plaintiff testified that he did not work after EG was born and that he hardly provided any financial support to defendant. Additionally, plaintiff initially testified that he had earned about $1200 per month working odd jobs while living in Sterling Heights; however, later, when shown his tax returns for 2015, he testified, consistently with the returns, that he had earned only $1500 for the entire year. Furthermore, plaintiff earned approximately $4700 in 2016, and he testified that he did not begin working until either September or October 2016 when his driver's license was reinstated. Plaintiff also confirmed that he had paid no child support. The trial court's finding that plaintiff failed to support defendant or the children without adequate reason is not against the great weight of the evidence.

Further, the trial court found plaintiff's volatile temper to be very concerning. Evidence was presented that plaintiff had sent offensive and threatening messages to defendant's boyfriend, and defendant testified that she feared communicating with plaintiff. Additionally, defendant described an incident that occurred at the hospital when EG was being treated for his burns. Plaintiff became very upset, used profanity against defendant, and told her that he would call the police and have her put in jail for the accident. A police officer instructed plaintiff to leave, and the officer later escorted defendant out of the hospital to ensure that she made it to her vehicle safely. Defendant testified that she had been afraid that plaintiff might do something to her after she left the hospital property. Furthermore, she explained that the reason for her delay in contacting plaintiff about the accident was her fear of how he would react.

Third, the trial court found that the significant amount of polite text messages plaintiff compiled for the court did not offset the other offensive communications he had with defendant and her boyfriend. The trial court also found it unlikely that these were the only instances of improper conduct. Furthermore, the trial court found that plaintiff appeared unaware of how much his improper behavior negatively affected his relationship with defendant.

In sum, the trial court's findings with respect to each of the best-interest factors were not against the great weight of the evidence, because the evidence did not clearly preponderate in the opposite direction.

### III. CONCLUSION

The trial court's award of sole physical custody of the children to defendant did not constitute a ruling so palpably and grossly violative of fact and logic that it evidenced a perversity of will, a defiance of judgment, or the exercise of passion or bias, i.e., there was no abuse of discretion.

Affirmed. Having fully prevailed on appeal, defendant is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle