*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIFFANY JEN-NAY BALZESKI,

UNPUBLISHED
April 28, 2026
9:17 AM

Plaintiff-Appellant,

v

No. 375182
Kent Circuit Court
LC No. 22-007189-DC

CHRISTOPHER MICHAELL LAVOIE,

Defendant-Appellee.

AFTER REMAND

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

This child custody dispute returns to this Court after we vacated the trial court's March 25, 2025 order, which: (1) granted defendant-appellee, Christopher Michael LaVoie, sole legal custody and continued joint physical custody of the parties' minor child; and (2) established an equal parenting-time schedule with plaintiff-appellant, Tiffany Jen-Nay Balzeski. In January 2026, we remanded this case for further proceedings, while retaining jurisdiction, on the basis that the trial court abused its discretion by precluding plaintiff from introducing certain evidence at trial, "especially considering that plaintiff was a pro se litigant navigating the trial court procedures without a scheduling order." *Balzeski v Lavoie*, unpublished per curiam opinion of the Court of Appeals, issued January 13, 2026 (Docket No. 375182), p 2. On remand, after holding a two-day trial, the trial court once again adopted its March 25, 2025 order, granting defendant sole legal custody and establishing an equal parenting-time schedule. We affirm.

## I. FACTS BEFORE REMAND

We previously provided the following brief history concerning this custody dispute:

This case concerns the party's [sic] custody arrangement of their minor child. In August 2024, defendant moved to modify the party's [sic] custody arrangement, generally requesting "more custody," and claiming that plaintiff was not abiding by the terms of the consent judgment. After the trial court found that

there was a change in circumstances sufficient to review the custody arrangement, it referred the matter to the Kent County Friend of the Court (FOC) for an investigation and recommendation. The FOC report recommended that the parties share joint physical custody, defendant exercise sole legal custody, and the parties exercise full alternating weeks of parenting time. Plaintiff objected to these recommendations and moved for sole legal and physical custody, alleging that defendant stalked, harassed, and verbally abused her as well as obstructed the child's medical care.

In March 2025, the trial court held an evidentiary hearing, with both parties appearing in propria persona. Plaintiff, defendant, and the FOC investigator testified, and the trial court took an offer of proof that plaintiff's friends and family gathered in support would affirm her story. The trial court did not allow plaintiff to admit any evidence beyond her testimony, reasoning that her evidence should have been received through the clerk's office so that defendant had a chance to see it before the hearing. The trial court ultimately adopted the FOC's proposed order in full, granting: (1) defendant sole legal custody, and (2) the parties' joint physical custody with full alternating weeks of parenting time. [*Id*. at 1-2.]

Plaintiff appealed that order. On appeal, we determined that the trial court abused its discretion in precluding plaintiff from calling witnesses or introducing her proffered evidence. *Id*. at 2. Accordingly, we remanded for further custody proceedings and retained jurisdiction.

## II. FACTS AFTER REMAND

Following our order for remand, child exchanges resumed according to the terms of the trial court's May 2023 consent judgment, where the parties shared joint legal custody, defendant had physical custody on Thursday evenings and alternating weekends, and plaintiff had physical custody at all other times. Defendant attempted to arrange child exchanges through a neutral third party, stating that he was concerned that continued in-person exchanges could give rise to further allegations and distress. After his attempts at reaching such an arrangement failed, defendant requested that the trial court order as much, which it did.

In February 2026, the trial court held a two-day trial on remand,[1] at which both parties testified, presented witnesses, and admitted exhibits. Multiple witnesses testified that although defendant had been hesitant to enroll the child in certain services, he had come around after the services were explained to him further. Similarly, while the prior appeal was pending, and defendant was exercising sole legal custody, defendant had tried to prevent plaintiff from attending one of the child's school meetings; however, after the school explained that plaintiff was allowed to participate in such matters because they were not "decisions" related to the child's schooling, defendant "got to a place of mutual understanding."

Defendant had considered enrolling the child in a different school district for the 2025-2026 school year because to keep the child enrolled at his current school, defendant needed to

---

[1] The trial court prioritized this case and scheduled the trial expeditiously.

know plaintiff's address, and because of the Ottawa County PPO, defendant did not have that information. Regardless, school personnel resolved the issue, and the child stayed at his original school. Defendant testified that he was currently trying to enroll the child in a local environmental school for the 2026-2027 school year because the child loved being outdoors; defendant explained that he was going through the process of making sure that all the child's IEP services would transfer, however.

Defendant testified that an Ottawa County PPO issued in January 2026 had been a barricade to his meaningfully communicating with the child's care providers because he had to sit in a separate room at appointments, and plaintiff refused to share the child's medical care information with him.[2] Similarly, plaintiff testified that when defendant exercised sole legal custody, he did not keep her informed of the child's medical care. Defendant was unsure whether the child's autism diagnosis was accurate, and the child's current primary care physician, who defendant chose for the child after he was granted sole legal custody, testified that she was "trying to get [the child] evaluated to confirm if that was an accurate diagnosis." There was testimony that the child presented with less needs while in defendant's care and seemed to have regressed behavior in plaintiff's care.

Plaintiff and her family[3] extensively testified that defendant had previously committed acts of domestic violence against plaintiff and the child. Similarly, defendant testified that plaintiff physically attacked him when they broke up. Both parties denied these allegations. Additionally, defendant repeatedly pointed to the fact that a portion of plaintiff's psychological evaluation, was inconclusive.

Defendant testified that he wanted to resume the March 2025 custody arrangement because it felt fair for the child to have both parents equally in his life. Plaintiff testified that she was no longer seeking full custody of the child because she did not think the court would grant that request; instead, she wanted defendant to "get the less [sic: least] time as possible." The parties submitted written closing arguments supporting these beliefs.

In March 2026, the trial court issued its written opinion and order, providing a summary of the evidence presented at trial and detailed findings regarding each of the best-interest factors under MCL 722.23. The court concluded as follows:

> Clear and convincing evidence exists to modify legal custody from joint legal custody to legal custody to [defendant].
>
> Joint physical custody is continued with alternate week parenting. Exchanges shall occur every Friday at school. If school is not in session, it shall

---

[2] Although defendant has dyslexia, he explained that he learned how to use a text-to-speech feature to help him better navigate the child's online medical portal.

[3] At multiple points, defendant and defendant's fiancé had sought PPOs against plaintiff, with no success. But at one point, defendant's fiancé obtained a PPO against plaintiff's mother because of threats made in court; that PPO was no longer in effect.

occur at the Walker Police Department. The Court adopts the terms of its March 25, 2025 order. [Defendant] shall begin his week of parenting time on Friday, March 13, 2026.

Plaintiff now appeals.

## III. CUSTODY AND PARENTING TIME

Once again, plaintiff argues that the trial court erred by granting defendant sole legal custody and equal parenting time. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was thoroughly raised and decided in the trial court, it is preserved for appellate review. See *Kuebler v Kuebler*, 346 Mich App 633, 652 n 9; 13 NW3d 339 (2023). Our Supreme Court has explained as follows:

> Under MCL 722.28 of the Child Custody Act, MCL 722.21 *et seq.*, to expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. MCL 722.28 incorporates three standards of review into the act: (1) a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction; (2) an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias; and (3) clear legal error exists when a court incorrectly chooses, interprets, or applies the law. [*Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citations omitted).]

"We defer to the special ability of the trial court to judge the credibility of witnesses." *Cassidy v Cassidy*, 318 Mich App 463, 476; 899 NW2d 65 (2017) (quotation marks and citation omitted). That is because "trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility." *Sabatine*, 513 Mich at 285 (quotation marks and citation omitted). "Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

MCL 722.27(1)(c) gives the trial court authority to modify or amend its previous judgments or orders upon a showing of proper cause or a change in circumstances. See *id*. "When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of

that child." *Id*. at 286 (quotation marks and citation omitted). "If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests." *Id*. (quotation marks and citation omitted). "On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*. (quotation marks and citation omitted).

"To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23 and to apply the appropriate standard of proof." *Kuebler*, 346 Mich App at 671. "A trial court must consider and explicitly state its findings and conclusions with respect to each of these factors." *Id*. (quotation marks and citation omitted). "In cases involving a request for joint custody, the trial court must also consider whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Id*. (quotation marks and citation omitted).

In this case, plaintiff does not raise any arguments regarding the trial court's findings related to: (1) proper cause or change in circumstances, or (2) the child's established custodial environment.[4] Instead, plaintiff only argues that granting defendant sole legal custody and equal parenting time was contrary to the child's best interests. We disagree.

## 1. BEST INTERESTS

The trial court determined that five of the best-interest factors favored defendant, and the remaining factors did not favor either party. On appeal, plaintiff argues that the trial court's findings were against the great weight of the evidence for each best-interest factor; therefore, we analyze each factor in turn.[5]

### a. MCL 722.23(a)

MCL 722.23(a) considers "[t]he love, affection, and other emotional ties existing between the parties involved and the child."

The trial court found no preference under this factor, stating that "[c]learly both parents love their child a great deal." Plaintiff argues that this factor should have favored her, considering her "historical primary caretaking role . . . ." But this factor simply weighs the parties' love and

---

[4] In any event, the trial court applied the higher, clear-and-convincing-evidence standard when determining the child's best interests on remand. See *Sabatine*, 513 Mich at 286.

[5] As an initial matter, plaintiff argues that the trial court "conducted only a cursory analysis"; however, we find that the trial court's detailed order clearly, explicitly, and sufficiently: (1) reiterated the factual background of this case, and (2) stated its findings and conclusions for each best-interest factor. See *Kuebler*, 346 Mich App at 671. Additionally, plaintiff raises the same arguments under multiple factors. For the sake of brevity, we will not readdress every single argument under each issue; instead, we will address the arguments under the factors best suited for that concern.

bond with the child, not the parties' caretaking roles. See MCL 722.23(a). Because the record clearly shows that both parties have strong emotional bonds with the child, the trial court's finding as to this factor was not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

b. MCL 722.23(b)

MCL 722.23(b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any."

The trial court found that although "both parties have the capacity to provide [the child] with love and affection," this factor favored defendant because he had "shown the capacity and disposition to provide guidance to [the child] in valuing his relationship with his mother and having reasonable expectations for his development with autism. He is a part of a family system where there appears to be respect and support." Conversely, plaintiff "and her family present with harsh, vindictive, angry attitudes to demean and discredit [defendant], which must seep into the difficulty [the child] experiences with transitions." The trial court further found that plaintiff's "guidance is colored by her version of trauma from the March 2022 breakup from which she is unwilling and/or unable to move forward." Although both parties testified that they furthered the child's religious development,[6] the court only acknowledged defendant's efforts in that regard.

Plaintiff argues that the trial court's findings under this factor were contrary to the evidence because: (1) defendant and his fiancée did not promote plaintiff's relationship with the child, (2) defendant had previously canceled referrals for the child's services, (3) defendant tried to exclude plaintiff from one of the child's school meetings, and (4) plaintiff had historically been the child's primary caretaker and advocate. Plaintiff also argues that the court improperly held against her the history of abuse she suffered at defendant's hands.

As previously stated, the record reflected that although defendant had been hesitant to enroll the child in certain services, he had come around after the services were more fully explained to him. Similarly, although defendant had tried to prevent plaintiff from attending one of the child's school meetings, he allowed plaintiff to attend after the school explained what sole legal custody entails in a school setting. Both parties testified that they had been involved in the child's schooling and medical care. Moreover, even if defendant never explicitly said that he is willing to foster a loving relationship between plaintiff and the child, such willingness can be inferred from his request for equal parenting time. Meanwhile, plaintiff testified that she was no longer seeking full custody of the child because she did not think that the court would grant that request;

---

[6] Defendant testified that he took the child to church, which the child enjoyed. Plaintiff testified that she did not take the child to church because he was sensitive to loud sounds and large crowds; instead, she and the child studied the Bible at home. This was but one instance showing that the child presented with less needs while in defendant's care and seemed to have regressed behavior in plaintiff's care.

instead, she wanted defendant to "get the less [sic: least] time as possible." Accordingly, it is clear that plaintiff was not willing to foster the child's relationship with defendant.[7]

Regarding the trial court's acknowledgement of plaintiff's "version of trauma from the March 2022 breakup," both parties testified that they had experienced acts of domestic violence at the hands of the other party. Plaintiff's family vehemently supported plaintiff in this regard. Considering the trial court's superior ability to judge the credibility of witnesses, *Cassidy*, 318 Mich App at 476, neither the trial court's findings regarding this issue nor the importance of this issue were against the great weight of the evidence. The trial court's remarks regarding this topic—under this factor—merely attempted to explained plaintiff's unwillingness to foster the child's relationship with defendant.

On this record, the evidence does not clearly preponderate against the trial court's finding that plaintiff and defendant are equally capable of providing the child with love, affection, and guidance; clearly, plaintiff and her family's hostility toward defendant negatively impacts the child's loving environment. See *Sabatine*, 513 Mich at 284.

c. MCL 722.23(c)

MCL 722.23(c) considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs."

The trial court found that this factor favored defendant because: (1) plaintiff's "PPO prohibited full participation of [defendant] at medical appointments," (2) plaintiff "has a history of not following court orders regarding legal custody and giving providers inaccurate information discrediting [defendant]," and (3) defendant continued the child's medical care while he had sole legal custody. The trial court acknowledged that both parties financially relied on family and that both parties provided the child with adequate food and clothing.

Plaintiff challenges most of the trial court's findings under this factor, but as previously stated, the record shows that defendant has come around to participate in the child's recommended services; therefore, the parties seem equally willing to ensure that the child receives appropriate care. Moreover, the testimony at trial showed that before defendant was granted sole legal custody, the Ottawa County PPO had been a barricade to his meaningfully communicating with the child's care providers because he had to sit in a separate room at appointments, and plaintiff refused to provide information about the child's medical care with him. For example, messages plaintiff submitted to the trial court showed that when the parties shared joint legal custody, plaintiff

---

[7] MCL 722.23(j) is the factor that specifically considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." In this case, the trial court properly considered that dynamic under MCL 722.23(j), noting that factor (j) "remains the most concerning factor in this case." The trial court's opinion regarding factor (j) therefore contributed to and underlined its findings under other factors. Because plaintiff raises issue with that finding under multiple factors, we address it before arriving at the MCL 722.23(j) analysis.

arranged for services and referrals for the child without defendant's consent or knowledge. Moreover, defendant testified that plaintiff had attempted to cancel an appointment that defendant made with one of the child's doctors to specifically discuss the child's care, even though plaintiff and the child would not have been present at that appointment. With no supporting evidence, plaintiff asserts that defendant booked that appointment to slander her to the doctor. Plaintiff also stated that she sought play therapy for the child specifically on the basis that the child suffered from post-traumatic stress disorder (PTSD) caused by defendant, but the record does not show that the child was ever formally diagnosed with PTSD. Again, the record indicates that the child presented with less needs while in defendant's care and seemed to have regressed behavior in plaintiff's care.

In sum, nothing in the record suggests that plaintiff or defendant are unable to provide for the child's needs with the assistance of their respective families. But because plaintiff has a demonstrated history of failing to cooperatively engage with defendant and share information about the child's medical care and needs while sharing legal custody, the evidence does not clearly preponderate against the trial court's finding under this factor. See *Sabatine*, 513 Mich at 284.

### d. MCL 722.23(d)

MCL 722.23(d) considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity."

The trial court found no preference under this factor. Plaintiff argues that this factor should have favored her because: (1) she provided the child's primary residence since she left defendant in 2022, and (2) defendant disrupted the child's medical care by needlessly changing therapy and medical providers after he was granted sole legal custody. Defendant testified that the reason he changed the child's primary care physician was because the child's original physician was plaintiff's family physician, and defendant feared that he would encounter plaintiff or her family at that doctor's office. This appears to be a reasonable concern considering the Ottawa County PPO. Moreover, considering that plaintiff refused to take the child to the new physician, and told defendant that she wanted to discontinue the child's care with that physician, it seems likely that plaintiff would once again change the child's medical providers, with little regard of the child's continuity of care, if given the chance.

Other than both parties' unsubstantiated allegations of abuse, there is no indication in the record that either parent's home is unstable or unsafe for the child. Although the child historically lived with plaintiff before custody changed, the record suggests that the child made meaningful progress while under an equal parenting-time schedule that permitted plaintiff and defendant to minimize their interactions. The child has emotional attachments to both plaintiff and defendant and their respective families, and it is desirable to maintain those relationships. As such, the trial court's findings regarding this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

### e. MCL 722.23(e)

MCL 722.23(e) considers "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes."

The trial court found that this factor favored defendant because "[plaintiff] and her parents do not support coparenting, [and] are hostile to [defendant], which is contrary to the best interest of [the child]." On this factor, the trial court erred. MCL 722.23(e) considers the permanence of plaintiff's and defendant's respective families, not their hostility to one another. Although that hostility is relevant to the child's best interests, it is not properly considered under this factor. The trial court should have weighed this factor neutrally because the record suggests that both families are relatively permanent and neither plaintiff nor defendant own the home where they reside. See *Kuebler*, 346 Mich App at 683; *Brown v Brown*, 332 Mich App 1, 21; 955 NW2d 515 (2020).

### f. MCL 722.23(f)

MCL 722.23(f) considers "[t]he moral fitness of the parties involved."

The trial court found no preference under this factor. Plaintiff argues that this factor should have favored her because of defendant's criminal history, plaintiff's allegations of abuse, and defendant's violation of the Ottawa County PPO. We disagree.

Factor (f) considers a parent's wrongful conduct only to the extent that the conduct "necessarily has a significant influence on how one will function as a parent." *Brown*, 332 Mich App at 22 (quotation marks and citation omitted). The trial court explicitly stated that it did not find plaintiff's allegations of abuse to be credible. The trial court also explicitly considered defendant's decade-old criminal history and January 2025 PPO violation. Notably, defendant was the party who attempted to arrange child exchanges through a neutral third party after remand, stating that he was concerned that continued in-person exchanges could give rise to further allegations and distress. And as previously stated, plaintiff's allegation that defendant and his fiancé physically abused the child were unsubstantiated. When weighing this evidence, the trial court apparently concluded that defendant's wrongful conduct did not have a significant influence on his ability to parent the child. See *id*.

Given the trial court's: (1) familiarity with the parties and their history, (2) explicit consideration of all the factors that plaintiff asks us to reconsider, and (3) special ability to judge the credibility of witnesses, *Cassidy*, 318 Mich App at 476, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

### g. MCL 722.23(g)

MCL 722.23(g) considers "[t]he mental and physical health of the parties involved."

The trial court found no preference under this factor. Plaintiff argues that this factor should have favored her because defendant's dyslexia impacts his ability to parent. When analyzing this factor, the trial court explicitly considered defendant's dyslexia and plaintiff's PTSD and psychological evaluation. The record reflects that defendant has obtained help from others or, more recently, used technology to cope with his dyslexia, and he has functioned well so far. Because the record does not indicate that defendant's dyslexia or plaintiff's PTSD impacts their ability to parent the child, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

## h. MCL 722.23(h)

MCL 722.23(h) considers "[t]he home, school, and community record of the child."

The trial court found that this factor favored defendant, reasoning that "[t]he description of [the child] in each parent's home is starkly different. In [defendant's] home[, the child] made much stronger progress in toileting, eating, and behavior. [Plaintiff] describes a child with more significant disabilities." Contrary to plaintiff's assertions on appeal, the record supports the trial court's finding that that the child presented with less needs while in defendant's care and seemed to have regressed behavior in plaintiff's care. And although defendant testified that he was currently trying to enroll the child in a new school, he was doing so to encourage the child's love of nature, and he explained that he was going through the process of making sure that all the child's IEP services would transfer. Moreover, as previously stated, although plaintiff had historically managed the child's medical and educational needs, defendant had taken a more active role in those decisions once he was given the chance. Considering the trial court's special ability to judge the credibility of witnesses, *Cassidy*, 318 Mich App at 476, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

## i. MCL 722.23(i)

MCL 722.23(i) considers "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." Plaintiff agrees with the trial court's finding that the child was too young to be interviewed in this case.

## j. MCL 722.23(j)

MCL 722.23(j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." "A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." MCL 722.23(j).

"In effect, Factor (j) favors parents who facilitate the relationship of their children with the other parent because it is presumed that it is in a children's best interests to have a strong relationship with both parents." *Kuebler*, 346 Mich App at 686 (quotation marks and citation omitted). "[T]his presumption can be overcome with evidence that interference with the other parent's parental relationship is reasonably necessary for the child's safety, in which case those reasonable acts cannot be counted against a parent under Factor (j)." *Id*. But "[a] parent's fabrications of abuse, or other conduct designed to obstruct or sabotage the opposing parent's relationship with the child, may be considered under Factor (j)." *Id*.

The trial court found that this factor favored defendant, and that it "remains the most concerning factor in this case." When making this finding, the trial court noted that: (1) defendant wants the child to have a loving relationship with plaintiff, but plaintiff "would prefer that [defendant] not have any time with [the child]"; (2) plaintiff "sees no value in coparenting"; (3) "[j]oint legal custody has not been successful"; and (4) defendant "has greater capacity as a sole

-10-

legal custodian to keep [plaintiff] informed." Plaintiff argues that every aspect of this finding was erroneous, except for the court's statement that joint legal custody is impracticable.

Again. considering the trial court's special ability to judge the credibility of witnesses, *Cassidy*, 318 Mich App at 476, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284; *Kuebler*, 346 Mich App at 686.

### k. MCL 722.23(k)

MCL 722.23(k) considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child."

The trial court found no preference under this factor,  Based on our review of the entire record, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

### l. MCL 722.23(l)

MCL 722.23(l) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute."

The trial court found no preference under this factor. Based on the record before us, we conclude that the trial court's findings under this factor were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

### III. CONCLUSION

Although the trial court should have weighed MCL 722.23(e) neutrally, that error was harmless. See *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015). Four other factors favored defendant without any indication of error in their consideration, and none favored plaintiff. See, e.g., *id*. "In order for plaintiff to show that she should have been awarded custody, it is not only necessary for her to show that the trial court erred in its consideration of some of the factors that favored defendant, but also that some of the factors favored her." *Id*. Considering the trial court's superior ability to judge the credibility of witnesses, *Cassidy*, 318 Mich App at 476, the trial court did not abuse its discretion by modifying legal custody and parenting time in defendant's favor. Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney