*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY ANN BROWN, formerly known as
KIMBERLY ANN PENTONEY,

        Plaintiff-Appellee,

v

KEVIN BRACE PENTONEY,

        Defendant-Appellant.

UNPUBLISHED
May 7, 2020

No. 349532
Wayne Circuit Court
Family Division
LC No. 12-108147-DM

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's June 12, 2019 opinion and order to the extent the order set aside a temporary custody order and granting in part plaintiff's motion to change custody of the parties' minor children, OP and SP. The order also resolved other matters, but none of those other matters are pertinent to this appeal. We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1).

## I. BACKGROUND

The instant matter is, unfortunately, only one of the latest salvos in an appallingly contentious divorce litigation. On November 8, 2012, the trial court entered a consent judgment of divorce that provided for joint legal and joint physical custody of the children. Defendant, who was an airline pilot, was granted "reasonable and liberal parenting time," with the parties purportedly agreeing to follow a "2-2-5-5" parenting time plan when allowed by defendant's work schedule and, in any event, providing that each party would have 15 overnights a month. The parties then proved unable to maintain or reach agreement regarding custody of the children, ultimately degenerating into what the trial court aptly described as "a disconcerting, tumultuous, dramatic, and long-standing pattern of problematic interactions between the parties and between the parties and their children. The sheer volume of filings and other [c]ourt events reflects the turbulence in this case." Given the countless motions that have been filed in this case, a full

-1-

procedural history would render this opinion distressing yet soporific, so we will only summarize the ensuing strife necessary to resolve this appeal.

During a custody dispute in 2014, the trial court appointed attorney R. Michael Jones as a guardian ad litem (GAL) for the children, and Jones has remained the GAL thereafter. Over the years, there have been multiple court-appointed family therapists and two forensic psychological evaluations of the family, including most recently by Dr. Larry Friedberg. Multiple Child Protective Services (CPS) complaints have been filed against plaintiff, all of which have proved unsubstantiated, and many of which were determined to be the product of manipulation by defendant. Following a hearing on February 1, 2018, that was held at Jones's request because of another such unsubstantiated CPS complaint, plaintiff moved to change custody.[1] Over the course of 2018 and 2019, numerous witnesses testified at various hearings. In relevant part, Dr. Friedberg concluded that defendant has engaged in a series of ongoing efforts to manipulate and alienate the children against plaintiff.

On September 7, 2018, the parties reached an ostensible settlement agreement. The regularly assigned trial judge was, unfortunately, on an extended medical leave at the time, so a substitute judge entered an order in accordance with the settlement agreement. The order provided for defendant to have supervised therapeutic parenting time with the children, and during this period of supervised parenting time, plaintiff was to have temporary sole legal and sole physical custody of the children. When supervised parenting time was discontinued, defendant was to be awarded unsupervised parenting time with 116 overnights a year, and the parties would at that point have joint legal custody with plaintiff having sole physical custody of the children.

A noteworthy incident occurred in December 2018, while both children were living exclusively with plaintiff. OP, who was 14 years old at the time, ran away from home and could not be found by police. She was found at school the next day, refused to go home with plaintiff, and threatened to harm herself if she had to live with plaintiff. OP then began living in a series of residential shelters and institutions for juveniles. Although OP and defendant claimed that OP had not been with defendant or defendant's father on the night that she ran away, defendant's father was found in possession of an item that belonged to OP that had been in plaintiff's home the night before OP failed to return home. In January 2019, plaintiff filed an ex parte emergency motion to suspend defendant's parenting time. The substitute judge entered a perfunctory form order denying the motion, noting that supervised therapeutic parenting time remained in place.

Shortly thereafter, the regularly assigned judge returned from medical leave and resumed presiding over the case. After hearing testimony at numerous hearings and expressing a certain amount of dismay at the orders entered by the substitute judge, the trial court issued its June 12, 2019 opinion granting in part plaintiff's motion to change custody. We will not attempt to summarize the extensive evidence presented, although we note that defendant asked the trial court to talk to the children directly. The trial court set aside the September 7, 2018 order following the parties supposed agreement on custody and parenting time, because the substitute judge had failed to evaluate or state conclusions on the best interest factors in MCL 722.23. The trial court denied

---

[1] Plaintiff initially made the request orally at the hearing; she then filed a written motion a few months later.

without prejudice a request for attorney fees contained in plaintiff's motion to change custody. Next, the court noted that, because the September 7, 2018 order was vacated and there was no other order addressing custody since the November 8, 2012 consent judgment of divorce, the divorce judgment was the governing custody order.

Thus, the divorce judgment provided for joint legal and joint physical custody of the children, and this was the custody order that plaintiff was seeking to modify in her motion to change custody. The court found that proper cause and a change of circumstances existed given the severe parental alienation that has occurred in this case. Also, defendant had health problems, which affected his ability to maintain his well-paid employment as an airline pilot. The trial court found that SP has an established custodial environment with both parties and that OP's established custodial environment is only with defendant. Therefore, plaintiff had the burden of establishing by clear and convincing evidence that a change of custody was in the children's best interests.

The trial court then turned to an analysis of the best interest factors under MCL 722.23. Defendant's parental alienation tactics were central to the trial court's findings on many of the best interest factors. The court found that none of the best interest factors favored defendant, two of the factors were inapplicable, two of the factors weighed equally between the parties, and five of the factors weighed in plaintiff's favor, with three of those factors weighing strongly in plaintiff's favor. Although defendant mostly does not challenge the trial court's findings, we would be remiss if we did not observe that they are amply supported by the extensive evidence in this matter.

Specifically relevant to this appeal, the trial court observed that the children were, respectively, 15 and 13 years old, so they were of sufficient age to express a "reasonable preference" under factor (i), MCL 722.23(i). The court recognized that Jones had informed the court that OP did not want to live with plaintiff and that, if she could not live with defendant, she wanted to live with one of defendant's relatives. Jones also informed the court that SP did not want to see defendant unless OP was there. The court noted that it had taken the issue of interviewing the children under advisement at the evidentiary hearing. The court then declined to interview the children because the children had stated their preferences, and the evidence of those preferences had been introduced through Jones. Nevertheless, although the children had stated their preferences, the court found, in accordance with Dr. Friedberg's evaluation, that the children could not express a *reasonable* preference given defendant's manipulation and alienation tactics. The trial court therefore stated that factor (i) would not be considered. On the basis of its analysis of the best interest factors, the trial court determined that plaintiff had shown by clear and convincing evidence that it was in the best interests of the children to modify custody by granting sole legal and sole physical custody of the children to plaintiff.

Regarding parenting time, the court noted that, because the September 7, 2018 order had been set aside, the last parenting time order was an August 18, 2017, order, which provided for "a 2-2-5-5 parenting time schedule." The trial court revisited parenting time in light of the change of custody ordered by the court. The court considered the relevant parenting time factors of MCL 722.27a(7). The court adopted Dr. Friedberg's recommendations regarding parenting time, which consisted of the following: (1) that OP live in a foster home with someone not involved in defendant's parental alienation tactics until Jones and the court-appointed family therapist, Dr. Tracey Stulberg, recommend that OP can reside with plaintiff; (2) that defendant's parenting time with SP be supervised by Dr. Stulberg until Jones and Dr. Stulberg recommend a phased expansion

of parenting time on the basis of their estimate that the risk of parental alienation tactics by defendant has been greatly reduced; (3) that defendant have no parenting time with OP for at least four months, after which parenting time shall not resume until Jones and Dr. Stulberg recommend that supervised parenting time can begin under Dr. Stulberg's supervision; (4) and that an expansion of defendant's parenting time with OP not occur until Jones and Dr. Stulberg recommend a phased expansion on the basis of their estimate that the risk of parental alienation tactics by defendant has been greatly reduced. The court would monitor compliance with the parenting time order through periodic review hearings at which Dr. Stulberg and Jones were to provide updates and recommendations. A conforming order was entered on the same date that the trial court's opinion was issued. This appeal ensued.

## II. CUSTODY ORDER

Defendant first argues that the trial court improperly vacated the September 7, 2018, custody order and erroneously ignored the August 18, 2017, order so that it could find the consent judgment of divorce to be the most recent custody order. We disagree.

In child custody cases, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.

> Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error. A clear legal error occurs here when the circuit court incorrectly chooses, interprets, or applies the law. De novo review applies to underlying issues of statutory interpretation. [*Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014) (quotation marks, ellipsis, and citations omitted).]

"The court's factual findings are against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *In re AP*, 283 Mich App 574, 590; 770 NW2d 403 (2009).

The trial court did not err in vacating the September 7, 2018, custody order. That order was stipulated to by the parties, and the substitute judge who entered the order did not consider the best interest factors before entering the order. "The trial court cannot blindly accept the stipulation of the parties, but must independently determine what is in the best interests of the child." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). In *Phillips*, as in this case, "the trial court entered the stipulated order to change custody without making any independent determination regarding the best interests of the children pursuant to the Child Custody Act." *Id*. at 23. This Court concluded "that the trial court erred in failing to make such a determination." *Id*. This Court held that the trial court was required to set aside the stipulated order and to make its own determination regarding the best interests of the children. *Id*. at 23-24. Accordingly, the trial court in this case properly vacated the stipulated order of September 7, 2018, and made its own child custody determination under the best interest factors.

The trial court also did not err by failing to treat the August 18, 2017 order as the most recent custody order. The August 18, 2017 order was not a custody order. Rather, that order merely released Dr. Jerome Price as the family counselor and provided that parenting time would be on the 2-2-5-5 schedule, i.e., the arrangement provided for by the consent judgment of divorce. In particular, the parties agreed that defendant's summer parenting time with OP was terminated and that parenting time for both children would occur under a 2-2-5-5 schedule. The order explained that parenting time for SP had "remained unchanged on the 2-2-5-5 schedule during the summer."

For these reasons, the September 7, 2018, order was properly vacated, and the August 18, 2017, order was not a custody order. Therefore, the trial court correctly determined that the most recent order entered in this case was the consent judgment of divorce.

### III.  INTERVIEW WITH THE CHILDREN

Defendant next argues that the trial court erred when it declined to interview the children in order to determine their preferences for custody. We disagree.

A trial court determining child custody must utilize the best interest factors set forth in MCL 722.23. Factor (i) requires the court to consider "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). Failing to consider the wishes of a ten-year-old child constitutes error mandating reversal. *Kubicki*, 306 Mich App at 544-545. Here, the trial court expressly recognized that the children, aged 13 and 15, were old enough to express a preference. The trial court also expressly recounted those preferences, as relayed by Jones, the children's GAL. The trial court concluded, reasonably based on the evidence and Dr. Friedberg's evaluation, that the children could not express *reasonable* preferences because of defendant's manipulation and abuse. The trial court stated that factor (i) would not be considered. However, the record shows that this was simply an unfortunate choice of phrasing. The trial court clearly did, in fact, thoughtfully and extensively consider factor (i), and concluded that the children did not have a "reasonable preference."

Defendant apparently challenges the trial court's decision to rely on the children's preferences as expressed through Jones, rather than as expressed through interviewing the children directly. However, a trial court is not always required to directly interview a child when determining whether the child has a reasonable custody preference. *Maier v Maier*, 311 Mich App 218, 223-226; 874 NW2d 725 (2015). In some cases, the trial court may find it more appropriate to rely on others, such as mental health professionals, in determining whether the child could express a reasonable preference. *Id*. at 225-226. In this case, the trial court relied on the GAL, Jones, who had spoken to the children and been involved with them since 2014. Jones explained that OP wished to live with defendant or one of defendant's relatives, whereas SP did not wish to see defendant unless OP was present. Defendant does not argue that Jones failed to accurately convey to the court the children's expressed preferences. The trial court did not err by deeming a direct interview unnecessary.

Further, the trial court did not err in finding that the children were unable to express a reasonable preference given defendant's manipulation and parental alienation tactics. The record was replete with evidence to support this finding; including numerous unsubstantiated CPS

-5-

complaints against plaintiff; evidence that defendant had directly manipulated OP into lying about plaintiff; and the testimony of Dr. Friedberg regarding his findings, including what he described as "smoking gun" evidence of defendant's emotionally abusive treatment of the children in trying to alienate them from plaintiff. This evidence included a disturbing incident in which defendant took SP to plaintiff's house when she was not home, made a video of SP as she was crying because plaintiff was not home, and then later showed the video to SP on multiple occasions. See *Maier*, 311 Mich App at 225-226 (upholding a finding that a child could not formulate or express a reasonable preference regarding custody given evidence of coaching, unsubstantiated CPS complaints, and the child's emotional distress). "The Child Custody Act requires that the court consider the reasonable preference of the child, *if one exists*." *Id*. at 224 (emphasis added). The trial court found that defendant's conduct precluded any such reasonable preference from existing. We will not recount the entirety of the evidence in this matter, but as noted, we conclude that the trial court's findings were amply supported.

## IV. GAL OR LGAL

Finally, we note defendant's bizarre assertion that the trial court retroactively changed Jones from an LGAL to a GAL. Defendant failed to include this issue in his statement of questions presented. "An issue not contained in the statement of questions presented is waived on appeal." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004). Waiver extinguishes any error and precludes appellate review. *Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). In any event, the trial court repeatedly indicated throughout the proceedings that Jones was a GAL rather than an LGAL. Defendant's counsel at one point apologized to the court for referring to Jones as an LGAL in a document and admitted that it was a typographical error. We find nothing in the record to suggest that Jones was ever anything other than a GAL, and indeed, the trial court's April 8, 2014, order *explicitly* appoints Jones as "Guardian ad Litem (GAL) of the two minor children . . . " Defendant has not only failed to establish the existence of any error requiring reversal on this issue, but if this issue had been properly presented to us, we would have found it frivolous. MCR 1.109(E)(5).

## V. CONCLUSION

The trial court did not err in vacating the September 7, 2018, order that should not have been entered in the first place; and it did not err in declining to treat the August 18, 2017, order as if it was a custody order. The trial court did not err in its analysis of factor (i) when determining the best interests of the children. The trial court never appointed Jones as an LGAL. We commend the trial court for its patience and for its thorough analysis of this troubling matter. Affirmed.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel