*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM ANTHONY PETSCH,

   Plaintiff-Appellee,

v

KATHERINE ELIZABETH AUER,

   Defendant-Appellant.

UNPUBLISHED
July 21, 2022

No. 359814
Midland Circuit Court
Family Division
LC No. 21-007981-DC

Before: MARKEY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Defendant, Katherine Elizabeth Auer, appeals as of right an order granting primary physical custody of the parties' two children, LMP and LEP, to plaintiff, William Anthony Petsch. We affirm.

## I. FACTS

The parties never married but lived together as a family with the two children. In July 2021, defendant departed the family home with the children and went to her mother's house in Arizona, without telling plaintiff where she had gone, and enrolled the children in school there. Plaintiff filed for custody. Defendant alleged that plaintiff had been verbally and sometimes physically abusive toward LMP and also alleged that plaintiff had raped her. The trial court concluded that both parties were good parents, and it found defendant's allegation of rape non-credible. It awarded primary physical custody of the children to plaintiff but stated that if defendant would move back to Michigan, a 50/50 custody schedule would apply.

Defendant now appeals, arguing that the trial court should have ordered that the children remain in her care in Arizona.

## II. DISCUSSION

In making its custody ruling, the trial court considered the best-interests factors of MCL 722.23, which states:

-1-

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court found that the parties were equal with respect to factors (a), (b), (c), (f), (g), (h), and (k). It found that plaintiff was favored with respect to factors (d), (e), (j), and (*l*). With respect to factor (i), the trial court simply stated that it had interviewed the children and taken their preferences into consideration.

Defendant argues that the trial court should have found that factors (a), (b), (c), (d), (e), (f), (h), (j), and (k), and (*l*) favored her.

MCL 722.28 states:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

As stated in *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003):

> We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Quotation marks and citations omitted.]

The trial court found the parties equal on factor (a) ("[t]he love, affection, and other emotional ties existing between the parties involved and the child"), stating, in particular, that plaintiff did activities with the children such as kayaking and vacationing and playing video games with LMP. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. *Vodvarka*, 259 Mich App at 507. The parties and the children had lived together as a family for many years. Plaintiff testified that he had a "[f]ather and son" relationship with LMP and that they "share[d] common interests." He said that he and LMP played games such as Minecraft at times. He said that LEP was "wonderful." He described LMP as "amazing" and passionate. Defendant admitted to texting plaintiff and letting him know that LMP wanted to spend extra time with plaintiff on a particular evening. Plaintiff provided photographs of happy family vacations. Plaintiff said that the children were always happy in general and that nobody ever told him that LMP was afraid of him. Plaintiff was the primary cook for the family. Defendant admitted to stating that plaintiff was a good parent. Given all the evidence, there is no basis for overturning the trial court's finding regarding factor (a).

The trial court found the parties equal on factor (b) ("[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any"), stating that both parties disciplined the children and that although defendant was alleging that plaintiff was abusive toward LMP and that the children were afraid of plaintiff, such fear had never been communicated to plaintiff, and plaintiff was open to counseling for LMP. Defendant admitted that she asked plaintiff for help with discipline. Although defendant alleged that plaintiff was too harsh on LMP, and there was, indeed, testimony to this effect, the paternal aunt, who was very close with the family, said that she never saw any concerning behaviors between plaintiff and LMP. She said they had a good relationship. Plaintiff said that he was and always has been open to having LMP go to counseling.

The paternal grandmother testified that she lives very close to plaintiff and had seen the family and babysat often. She said that the children were very close with plaintiff and also said that she had "never seen him raise his hand to the children." She had never observed plaintiff speaking degradingly to LMP and had not seen LMP act fearful of plaintiff. Defendant, for her part, admitted to texting plaintiff, " 'Your son is an a\*\*hole,' " regarding some behaviors at school. She also admitted saying that she wished LMP would "bash" the "face in" of another child at school and admitted that it was possible that she had expressed a desire that a different child could be punched in the face. She admitted to referring to LMP as a "F\*\*ker" for getting a bad grade because of not studying. Viewing the testimony as a whole, it is difficult to conclude that the evidence clearly preponderates in the opposite direction from the trial court's finding on this factor. There was evidence that both parties had some concerning behaviors or made some concerning statements, but overall, they were capable parents.

The trial court found the parties equal on factor (c) ("[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs"), stating that plaintiff worked long hours to provide for the family yet still made dinner most nights and stating that defendant worked fewer hours but took care of more of the household matters. The trial court also mentioned that defendant had found a better-paying job in Arizona, was seeking governmental assistance, and that plaintiff had plans in place to care for the children if he received primary physical custody. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. Defendant asserts that she took the children to their medical and dental appointments, but this was because plaintiff worked long hours to provide the primary source of the family's income. Also, he provided the children's medical insurance. And defendant admitted that plaintiff usually made dinner for the children, despite his long work hours. Plaintiff also had plans in place for family members to look after the children during his working hours, if he were to get primary physical custody. In short, there was evidence that both parties could provide for the children's general care.

The trial court found that plaintiff was favored under factor (d) ("[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity"), stating that the children had lived in the Michigan home for seven years but had only moved to Arizona in July 2021. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. Defendant contends that the Michigan home was not satisfactory, but plenty of evidence indicated that it was. Defendant states, in the context of this factor, that plaintiff has an alcohol problem and that she does not drink alcohol in Arizona, but plaintiff had sought counseling for any possible issues with alcohol. Also, he said that he had not drunk any alcohol since the day defendant and the children left. And the evidence made clear that defendant, not just plaintiff, used alcohol while living in Michigan. The trial court did not err by finding that the children's Michigan home had been stable for many years longer than their home in Arizona and that it could remain so.

The trial court found that plaintiff was favored under factor (e) ("[t]he permanence, as a family unit, of the existing or proposed custodial home or homes"), stating that plaintiff's mother and sister lived nearby in Michigan and were very involved in the children's lives and that while defendant's mother resided at the home in Arizona, she was often gone long periods for camping. Defendant's argument about this factor on appeal does not make much logical sense. She is

arguing that the children deserve to achieve continuity in Arizona, but the fact is that they had very close ties with paternal family members in Michigan, and defendant abruptly changed this by moving to Arizona. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor because evidence suggested that the maternal grandmother, a part of the current family unit in Arizona, was intending to leave for extended periods on camping excursions.

The trial court found the parties equal under factor (f) ("[t]he moral fitness of the parties involved"), stating that both parties used marijuana and seeming to discount any suggestion that plaintiff had a severe drinking problem. Again, the evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. Defendant testified that plaintiff had a severe alcohol problem and drove drunk, but plaintiff denied this. Plaintiff had sought counseling for possible issues with alcohol. Also, he said that he had not drunk any alcohol since the day defendant and the children left. And again, the evidence made clear that defendant, not just plaintiff, used alcohol while living in Michigan. Plaintiff's work supervisor testified that there were no concerns about plaintiff's performance and that there were never any issues with plaintiff appearing intoxicated or hungover or smelling like alcohol. The supervisor emphasized that he had never once had a concern in that area. Defendant mentions an affair in the context of this factor, but the "affair" evidence was not admitted for the truth of the matter asserted but instead to show that defendant was trying to poison the relationship between plaintiff and the children.

The trial court found that the parties were equal regarding factor (h) ("[t]he home, school, and community record of the child"), stating that the children participated in extracurricular activities in both Michigan and Arizona and did fairly well in both schools, although LMP had done very poorly in one class in Michigan. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. Although it is true that LMP had not had as bad a grade in Arizona as he had had in one Michigan class, he had only been in the Arizona school for a very short time. Also, defendant herself admitted that the children participated in extracurricular activities in Michigan, not just in Arizona. Defendant implies that the children were more open and happy in Arizona, but plenty of evidence showed that they lived as normal, happy children in Michigan.

The trial court found that plaintiff was favored under factor (j) ("The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent."). The trial court stated, in part, that defendant took the children from plaintiff without telling him where they were, did not offer any contact between the children and plaintiff beyond that ordered by the court, and explicitly stated that she did not want the children to have any contact with him. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. It is of extreme significance that defendant took the children far away without informing plaintiff where they were. In addition, she freely admitted that she did not want the children to have any contact with plaintiff and admitted that she did not contact plaintiff's family to let them know her new telephone number so that they could be in contact with the children. It is notable, too, that defendant does not argue, in the context of this factor, about the sexual-assault and domestic-

violence language from the wording of the statute. There is no basis for overturning the trial court's findings on this factor.

The trial court found the parties equal on factor (k) ("[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child"), stating that plaintiff denied throwing a slipper and a Slurpee cup at defendant and also stating that defendant had slapped plaintiff. The trial court specifically concluded that defendant's allegation of rape was not credible. It noted that, in text messages after the date of the alleged rape, defendant spoke of plaintiff being sweet to her. It also noted that the parties spoke frankly about intimacy issues in text messages, but there was no mention of forced sex. The trial court also noted that when defendant filed for a PPO after the date of the alleged rape, she did not mention the rape, despite being questioned specifically about how plaintiff posed a danger to her. The evidence did not clearly preponderate in the opposite direction from the trial court's finding on this factor. Indeed, the trial court was the trier of fact, and it found defendant's rape allegation not credible. See *Martin v Martin*, 331 Mich App 224, 239; 952 NW2d 530 (2020). Also, defendant admitted to hitting plaintiff across the face in August 2020, after the two had been arguing because she accused him of cheating on her. On appeal, defendant contends that this factor should have favored her because of evidence that plaintiff had been abusive toward LMP, but plaintiff denied ever "physically punish[ing]" the children. And again, the paternal grandmother testified that the children were very close with plaintiff and also said that she had "never seen him raise his hand to the children." She had never observed plaintiff speaking degradingly to LMP and had not seen LMP act fearful of plaintiff. The parental aunt, too, said that she never saw any concerning behaviors between plaintiff and LMP. There is no basis for reversing the trial court's findings on this factor.

The trial court found that plaintiff was favored under factor (*l*) ("[a]ny other factor considered by the court to be relevant to a particular child custody dispute") because defendant moved so far away without sufficiently trying to separate from plaintiff while staying nearby. Defendant contends that this finding was erroneous because she had no choice but to move to Arizona. But defendant did not even broach the subject of living apart with plaintiff. Plaintiff said that if defendant had come to him with concerns before leaving for Arizona, he would have given her the family house and gone to live with his mother. The trial court's finding on this factor was not against the great weight of the evidence.

Given that the trial court's findings on the best-interests factors were not against the great weight of the evidence, plaintiff remains favored regarding factors (d), (e), (j), and (*l*). In sum, defendant took the children a great distance from plaintiff and disrupted their day-to-day lives and the very close relationships with their extended paternal family. She did not tell plaintiff where she was and admitted that she did not want the children to have a relationship with him. It cannot be said that the trial court's custody decision was an abuse of discretion, *Vodvarka*, 259 Mich App at 507-508, especially given the court's explicit statement that if defendant would move back to Michigan, it would award custody in a 50/50 manner. There *is* support in the record for some of the arguments made by defendant, but this Court is simply not free to make its own de novo determination and must be mindful of the standards of review. For example, "to the extent the [lower] court's findings were based on its assessment of the witnesses' credibility, we must defer to the court's determinations given its superior position to make these judgments." *Martin*, 331 Mich App at 239 (quotation marks and citation omitted). Also, in child-custody cases, "an abuse of discretion only occurs if the result is so palpably and grossly violative of fact and logic that it

evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015) (quotation marks, citations, and brackets omitted). Defendant has not met her burden for reversal under this standard.

What complicates matters, however, is that the trial court did not make a finding regarding the children's established custodial environment. In *Kessler v Kessler*, 295 Mich App 54, 59; 811 NW2d 39 (2011), the Court stated:

> In effect, the trial court operated on the premise that because the parties were living together with the children in the marital home up to the time of the custody hearing and no custody order had been entered by the court, it was not required to address whether an established custodial environment existed.

The Court went on to state:

> [A] trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination. Accordingly, a party who seeks to change an established custodial environment of a child is required to show by clear and convincing evidence that the change is in the child's best interests. We conclude that the trial court clearly erred when it failed to determine whether there was an established custodial environment with either or both of the parties before making its custody determination. [*Id*. at 61 (citation omitted); see also MCL 722.27.]

If a custody determination would not change a child's established custodial environment, then a preponderance-of-the-evidence standard, not a clear-and-convincing-evidence standard, applies. *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010).

In *Kessler*, 295 Mich App at 62, the Court concluded that the failure to determine whether an established custodial environment existed was not harmless because it affected the burden of proof. However, in *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009), the Court stated:

> The trial court never made any determination regarding whether an established custodial environment existed with either party or both parties. Whether an established custodial environment exists is a question of fact that the trial court must address before it makes a determination regarding the child's best interests. An established custodial environment exists if "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort," MCL 722.27(1)(c), and the relationship between the custodian and the child is marked by qualities of security, stability, and permanence. When a trial court fails to make a finding regarding the existence of a custodial environment, this Court will generally remand for such a finding unless sufficient information exists in the record for this Court to make a de novo determination of this issue. Although the trial court never made this determination, sufficient evidence exists in the record to establish that the child had

an established custodial environment with plaintiff. Plaintiff had been awarded sole legal and physical custody of the child in the judgment of divorce; the child had always lived with plaintiff and had naturally looked to plaintiff for guidance, discipline, the necessities of life, and parental comfort. There is no need to remand for a finding in this regard. [Some quotation marks and citations omitted.]

*Brausch* is binding precedent under MCR 7.215(J)(1). It is obvious that an established custodial environment existed with both parties in the present case, when defendant, plaintiff, and the children had been living as a family unit for many years and when overwhelming evidence showed that plaintiff was very involved in the children's lives despite the fact that he worked longer hours than defendant.

The next question is whether a remand is nevertheless warranted on the basis of the burden of proof. Because the trial court awarded plaintiff primary physical custody, it changed the established custodial environment, and the custody decision needed to be supported by clear and convincing evidence. What is significant here is that defendant admits that she did not make any argument about an established custodial environment below and admits that a plain-error standard of review applies to this issue.[1]

Here, the trial court did not state that the clear-and-convincing standard of evidence applied. Even so, a trial court is presumed to know and understand the applicable law. See *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007). Further, unlike in *Kessler*, 295 Mich App at 59, the trial court in this case did not state that it was applying a preponderance-of-the-evidence standard. Thus, the trial court's failure to explicitly mention the burden of proof it was applying, or the party who bore the burden, is not dispositive that the trial court failed to apply the proper standard, and plaintiff has not shown clear error on this issue.

Given that defendant concedes that the issue is subject to plain-error analysis, given that the trial court is presumed to know the law, and given the uncontroverted fact that defendant suddenly moved the children from a long-term, established family home and far from plaintiff, without telling him where they were, we affirm. In other words, given the extraordinary cross-country move by defendant with the children, we conclude that a remand is not warranted in this case because defendant has not shown that the error by the trial court affected the outcome of the proceedings. See *Carines*, 460 Mich at 763. That is, defendant has not shown that the ultimate

---

[1] In general, unpreserved issues are reviewed under the plain-error doctrine of *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Under the plain-error doctrine, reversal is warranted only if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. Arguably, the plain-error doctrine only applies in the context of criminal cases or constitutional issues, see *id.*, but we acknowledge that we have invoked the doctrine in custody cases as well. See, e.g., *Marik v Marik*, 325 Mich App 353, 359; 925 NW2d 885 (2018).

custody order would have been different if the trial court had explicitly stated on the record that it was applying a clear-and-convincing evidence standard.[2]

## III. CONCLUSION

Under the applicable standards of review, defendant has not shown entitlement to relief. We affirm.

/s/ Jane E. Markey
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[2] Given that the parties lived in two different states, it seemingly follows that primary physical custody could only be with one party. Thus, regardless of whether the trial court applied a preponderance-of-the-evidence standard or a clear-and-convincing-evidence standard, the trial court had to select one party to have primary physical custody.