*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COURTNEY LYNN TROOST, also known as
COURTNEY LYNN HORNBECK,

        Plaintiff-Appellant,

v

SEAN MICHAEL-ALLEN TROOST,

        Defendant-Appellee.

UNPUBLISHED
September 11, 2025
1:37 PM

No. 372188
Montcalm Circuit Court
LC No. 2019-025447-DM

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiff, Courtney Lynn Troost, also known as Courtney Lynn Hornbeck, appeals as of right the trial court's order granting a motion by defendant, Sean Michael-Allen Troost, to change custody of the parties' minor children, JT and FT. We affirm.

## I. FACTS

Plaintiff and defendant married in December 2012, and they had two children during the marriage, JT and FT. Plaintiff filed a complaint for divorce in June 2019. In March 2020, the trial court entered a judgment of divorce, which provided that: the parties would share joint legal custody of the children, the children would reside with plaintiff, and defendant would have liberal parenting time as agreed by the parties. In 2021, the trial court entered an order granting defendant parenting time as set forth in the Montcalm County Friend of the Court (FOC) parenting-time policy and as the parties agreed.

Plaintiff married Shane Hornbeck in November 2022, and the couple had a child together in 2023. In June 2023, plaintiff filed an ex parte motion to suspend defendant's parenting time and asserted that defendant emotionally and verbally abused the children by convincing them to lie and say that Shane was physically abusive. But in July 2023, during the referee's hearing on plaintiff's motion, evidence disclosed that Children's Protective Services (CPS) substantiated a report that both plaintiff and Shane physically abused FT. Accordingly, defendant asked for an expedited court hearing on the basis that the children were not safe in plaintiff's home. The referee stated that the only issue before it was plaintiff's motion to suspend defendant's parenting time,

-1-

and plaintiff failed to show proper cause or change in circumstances to modify defendant's parenting time; however, the referee noted that defendant could file an ex parte motion if he wanted to address his concerns with the trial court. The very next day, defendant moved for sole legal and physical custody, and in an ex parte order, the trial court: (1) granted defendant's motion in part, (2) ordered that Shane could not have contact with the children, and (3) ordered the FOC to conduct a full custody investigation. Plaintiff subsequently filed an objection.

In August 2023, the FOC completed its report. Thereafter, the referee conducted an evidentiary hearing to address custody, parenting time, child support, and plaintiff's objection to the ex parte order. The referee found that the children did not have an established custodial environment with either parent and that defendant proved by a preponderance of evidence that a change in custody was in the children's best interests. In November 2023, the trial court signed the referee's recommended order, which provided that the parties would share joint legal custody of the children, defendant would have primary physical custody, and plaintiff would have parenting time in accordance with the circuit court's FOC parenting-time policy. The order also stated that Shane could not have contact with the children.

Plaintiff filed a timely objection, asking the trial court to conduct a de novo review. Plaintiff noticed the hearing for January 2024, but then adjourned the hearing to February 2024. Plaintiff moved to supplement the record to add witnesses at the de novo hearing, which the trial court partially granted. In June 2024, the trial court began the de novo hearing. In July 2024, the parties made their closing arguments, and the trial court gave its opinion from the bench, finding that: (1) the referee correctly found proper cause or change in circumstances to reconsider the previous custody order, and (2) granting defendant physical custody was in the children's best interests. The trial court then issued its written order, stating that the order of November 2023 would remain in effect. Plaintiff now appeals.

## II. PRESERVATION AND STANDARD OF REVIEW

Generally, a party preserves an issue for appeal by raising it in the trial court. *Kuebler v Kuebler*, 346 Mich App 633, 652 n 9; 13 NW3d 339 (2023). In this case, plaintiff preserved her content-based objections to the ex parte order and the order following the referee's custody hearing by filing her objections in the trial court. See *id*. But plaintiff never objected to, or raised any argument about, the timing of the trial court's review of her objections; therefore, her untimeliness-claims are not preserved for appellate review. See *id*.

As set forth in the Child Custody Act, MCL 722.21 *et seq.*, we must affirm a child custody order on appeal unless the trial court's factual findings, including those regarding the existence of an established custodial environment and the best-interest factors, were against the great weight of the evidence; the trial court committed a palpable abuse of discretion; or the trial court made a clear legal error on a major issue. See MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994); *Safdar v Aziz*, 342 Mich App 165, 175-176; 992 NW2d 913 (2022); *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). Additionally, "[w]e defer to the special ability of the trial court to judge the credibility of witnesses." *Cassidy v Cassidy*, 318 Mich App 463, 476; 899 NW2d 65 (2017) (quotation marks and citation omitted).

As our Supreme Court explained in *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024):

> MCL 722.28 incorporates three standards of review into the act: (1) "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction," *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (cleaned up); (2) "an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias," *Maier v Maier*, 311 Mich App 218, 221, 874 NW2d 725 (2015) (cleaned up); and (3) clear legal error exists when "a court incorrectly chooses, interprets, or applies the law," *Fletcher*[, 447 Mich at 881].

Plaintiff also argues that the trial court violated the court rules, which is a claim that we review de novo. See *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 597 (2023).

Unpreserved claims in a child custody proceeding are reviewed for plain error. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7.

> To show that a plain error occurred warranting reversal, the following four elements must be established on appeal:
>
> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id.* (quotation marks and citation omitted).]

## III. EX PARTE AND CUSTODY ORDERS

On appeal, plaintiff first argues that the trial court clearly erred by improperly addressing her objections to the ex parte order entered in July 2023, as well as the referee's recommendations and order entered in November 2023. We disagree.

## A. EX PARTE ORDER

As discussed, in June 2023, the referee conducted an evidentiary hearing on plaintiff's motion to suspend defendant's parenting time after plaintiff alleged that defendant emotionally

and mentally abused the children. Plaintiff, defendant, and Shane testified at the hearing, and evidence showed that CPS substantiated a report of physical abuse involving plaintiff and Shane shortly before the hearing. Defendant presented photographs of injuries on FT that he claimed were caused by plaintiff and Shane.

The referee ultimately denied plaintiff's motion to suspend defendant's parenting time, but, the day after the hearing, defendant moved for a change of custody. The trial court entered the referee's recommended ex parte order granting defendant's motion in part. The order stated that it was based on evidence adduced at the evidentiary hearing, and it ordered that plaintiff and defendant have physical custody of the children on alternating weeks. As noted, the order also stated that Shane could not have contact with the children and that the FOC must conduct a full custody investigation.

In this case, as required by MCR 3.207(B)(5), the ex parte order recommended by the referee and entered by the trial court stated that the parties must file an objection within 14 days. Nevertheless, plaintiff filed an untimely objection 21 days after the trial court entered the order. Plaintiff did not request a hearing in her objection, but she noticed the matter for a hearing on August 30, 2023.

Plaintiff correctly asserts that even a temporary change of custody should not be made without an evidentiary hearing. See *Barretta v Zhitkov*, 348 Mich App 539, 557; 19 NW3d 420 (2023). But the record reflects that the trial court entered the ex parte order the day after the evidentiary hearing, and the order itself states that it was based on evidence adduced at that hearing. The evidentiary hearing included testimonial, photographic, and electronic evidence showing that FT was physically abused in plaintiff's home and that both children were at risk of harm with both plaintiff and Shane. Although evidence of physical abuse and criminality in plaintiff's home was not the initial reason for the evidentiary hearing, because it was conducted pursuant to plaintiff's motion to suspend defendant's parenting time, those issues became the focus of the evidentiary hearing when defendant disclosed his concerns, and plaintiff conceded that CPS substantiated that both plaintiff and Shane physically abused FT.

As this Court stated in *Barretta*:

[S]ituations might arise in which an immediate change of custody is necessary or compelled for the best interests of the child pending a hearing with regard to a motion for a permanent change of custody. Such a determination, however, can only be made after the court has considered facts established by admissible evidence—whether by affidavits, live testimony, documents, or otherwise. [*Id.* (quotation marks and citation omitted).]

In this case, the ex parte order was entered to protect the children. It allowed plaintiff to have ample, continued parenting time with JT and FT, and it ordered that Shane could not have contact with the children. When a change of custody is necessary because delay might result in irreparable injury, loss, or damage, the trial court is permitted to enter an ex parte order if the order includes the notice requirements that were plainly set forth in the ex parte order in this case, pursuant to MCR 3.207(B)(5). *Barretta*, 348 Mich App at 557-558.

-4-

Plaintiff complains that the trial court did not hold a hearing on her objection within 21 days as required under MCR 3.207(B)(6)(a). As an initial matter, MCR 3.207(B)(5) states that it applies to ex parte custody orders, and MCR 3.207(B)(6) refers to "all other cases." We interpret court rules "according to [their] plain language, giving each word and phrase its common, ordinary meaning." *Dawley v Hall*, 501 Mich 166, 169; 905 NW2d 863 (2018) (quotation marks and citation omitted). The plain language of the court rules indicates that the hearing within 21-day requirement under MCR 3.207(B)(6)(a) applies to ex parte orders that do not fall within MCR 3.207(B)(5) and that do not contain the notice provisions for filing an objection. Because the ex parte order in this case plainly fell within MCR 3.207(B)(5), and because the order contained the notice requirements as required, plaintiff's argument is without merit.

Nevertheless, plaintiff ignores that: (1) she did not file a timely objection; (2) before she filed her late objection, the trial court had already set the matter for a hearing with the referee on the issues of custody, parenting time, and child support; and (3) the FOC subsequently filed a notice that it would also consider plaintiff's objection to the ex parte order at the upcoming hearing. Having shown no plain error, plaintiff is not entitled to relief on this issue.

## B. ORDER AFTER CUSTODY HEARING

Plaintiff also raises various arguments about the referee's recommended order after the custody hearing and the trial court's handling of plaintiff's objection.

The FOC has a duty to "investigate all relevant facts, and to make a written report and recommendation to the parties and to the court, regarding child custody or parenting time, or both, if ordered to do so by the court." MCL 552.505(1)(g). In this case, the FOC investigator conducted a full investigation as ordered in the July 2023 ex parte order; she filed her report in August 2023; and, in September 2023, the parties appeared before the FOC referee for the first of two custody hearings. Under MCL 552.507(2)(a), a referee may hear all domestic-relations motions except motions to increase or decrease spousal support. A referee may also conduct evidentiary hearings and make findings and recommended orders pursuant to the evidence. MCL 552.507(2)(b) to (d).

As stated, in September 2023, the referee began a full custody hearing for the parties to present evidence on issues related to custody of the children, including the trial court's ex parte order, proper cause or change of circumstances, the existence of an established custodial environment, and the children's best interests. Between the first and second day of the custody hearing, plaintiff and her counsel stipulated to counsel's withdrawal, and plaintiff moved ex parte to adjourn the continued hearing so that her new counsel could represent her. As a result, the referee rescheduled the evidentiary hearing date from October to November 2023, and, after the parties finished their proofs and arguments, the referee made findings and recommendations on the record.

On November 22, 2023, the trial court entered the referee's recommendation and order granting defendant primary physical custody of the children, continuing the no-contact provision between Shane and the children, allowing plaintiff parenting time pursuant to the circuit court's parenting-time policy, and giving the order interim effect.

Plaintiff filed a timely objection 21 days later, requesting a de novo hearing. MCL 552.507(4) provides as follows:

> The court shall hold a de novo hearing on any matter that has been the subject of a referee hearing, upon the written request of either party or upon motion of the court. The request of a party shall be made within 21 days after the recommendation of the referee is made available to that party.

MCR 3.215(E)(4) also states that a party may seek judicial review of a referee's hearing, findings, or order. Pursuant to MCR 3.215(F)(1), the trial court must hold the hearing "within 21 days after the written objection is filed, unless the time is extended by the court for good cause." Accordingly, plaintiff argues that under MCR 3.215(F)(1), the court should have held the hearing on plaintiff's objection on or before January 3, 2024, instead of on February 26, 2024. But plaintiff fails to recognize that her counsel noticed the hearing on her objection for January 16, 2024, which would have been 34 days after she filed her objection. Plaintiff also fails to note on appeal that, three days after she filed the first notice of hearing, plaintiff's counsel filed an amended notice of hearing and set the hearing date on her objections for February 26, 2024. The amended notice was on the letterhead of plaintiff's counsel, and nothing in the record indicates that it was not plaintiff's choice to adjourn the hearing until late February 2024.

Plaintiff also claims that the trial court unduly delayed her de novo hearing and mishandled her request to supplemental the record. MCR 3.215(F)(2) provides as follows regarding judicial review of a referee's custody recommendation:

> To the extent allowed by law, the court may conduct the judicial hearing by review of the record of the referee hearing, but the court must allow the parties to present live evidence at the judicial hearing. The court may, in its discretion:
>
> (a) prohibit a party from presenting evidence on findings of fact to which no objection was filed;
>
> (b) determine that the referee's finding was conclusive as to a fact to which no objection was filed;
>
> (c) prohibit a party from introducing new evidence or calling new witnesses unless there is an adequate showing that the evidence was not available at the referee hearing;
>
> (d) impose any other reasonable restrictions and conditions to conserve the resources of the parties and the court.

A de novo hearing allows the trial court to render a new decision based on the record of the previous hearing, new evidence presented at the de novo hearing, or a combination of both. MCL 552.507(6). A hearing is de novo if the following conditions are met: (1) "[t]he parties have been given a full opportunity to present and preserve important evidence at the referee hearing"; and (2) "[f]or findings of fact which the parties have objected, the parties are afforded a new opportunity to offer the same evidence to the court as was presented to the referee and to

-6-

supplement that evidence with evidence that could not have been presented to the referee." MCL 552.507(5).

On February 26, 2024, at the hearing on plaintiff's objection, plaintiff's counsel stated that she intended to introduce testimony of additional witnesses, including FT's counselor and other, unnamed witnesses who would testify about the children missing appointments and performing poorly in school. Defendant objected because plaintiff stated at the referee hearing that she had no other witnesses to present and did not claim that the evidence was unavailable at the time of the hearing as required by MCR 3.215(F)(2)(c). Defendant also observed that the trial court's scheduling order required the parties to move to supplement the record.

The trial court ruled that it would give both parties the opportunity to address in writing matters related to additional witness testimony at the de novo hearing. The trial court instructed plaintiff to move to supplement the record and ordered defendant to respond to the motion within seven days. Plaintiff subsequently moved to supplement the record and clarified that she wanted FT's counselor, FT's teacher, a representative from DHHS, a representative from Hunt Orthodontics, plaintiff, and defendant to testify at the de novo hearing. The trial court ultimately ruled that plaintiff could present FT's counselor's testimony and that the parties could introduce evidence of facts related to issues like missed appointments, the children's school records, or the status of the CPS investigation through exhibits and the parties' testimonies.

It was within the trial court's authority to make reasonable restrictions or conditions on the evidence to be presented at the de novo hearing under MCR 3.215(F)(2). See *McGregor*, 346 Mich App at 102. To the extent that plaintiff argues that the trial court unfairly restricted her ability to present live testimony, she fails to offer any argument about what evidence she could not present because of the trial court's restriction. See *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 650; 662 NW2d 424 (2003). The trial court simply ruled that the parties could present exhibits to establish facts that did not require live testimony, including missed appointments, the children's grades, and whether the CPS case was closed. That plaintiff chose not to present documentary evidence or other exhibits on those issues was not the fault of the trial court.

Plaintiff further asserts that the trial court impermissibly delayed the de novo hearing. When the trial court ruled on plaintiff's motion to supplement the record, the de novo hearing was scheduled to begin on April 23, 2024; however, on April 22, 2024, the parties stipulated to adjourn the de novo hearing until May 20, 2024, and the de novo hearing ultimately began on June 3, 2024. The last two-week delay appeared to be related to FT's counselor's motion to quash plaintiff's second subpoena and the parties' arguments about allowing one witness to testify over Zoom.

Contrary to plaintiff's assertion, none of the delays to the de novo hearing can be attributed to any trial court errors. Plaintiff argues that this delay stems from the November 2023 order that the trial court entered and gave interim effect. MCR 3.215(G)(1) provides as follows:

> Except as limited by subrules (G)(2) and (G)(3), the court may, by an administrative order or by an order in the case, provide that the referee's recommended order will take effect on an interim basis pending a judicial hearing. The court must provide notice that the referee's recommended order will be an interim order by including that notice under a separate heading in the referee's

recommended order, or by an order adopting the referee's recommended order as an interim order.

In this case, the trial court did not give the order interim effect in an administrative order, but instead signed and entered the order with a notice that it had interim effect. This plainly complied with MCR 3.215(G).

As discussed, plaintiff had the opportunity to object to the recommended order, the trial court addressed her objections on the timeline plaintiff' counsel set, and the trial court held the de novo hearing on the date designated, in large part, by plaintiff's counsel. Contrary to plaintiff's assertion on appeal, nothing in the record suggests that the trial court made any errors that delayed plaintiff's de novo hearing. Plaintiff cannot claim error to which she has contributed by design or negligence, as an appellate parachute. See *LME v ARS*, 261 Mich App 273, 284; 680 NW2d 902 (2004).

## IV. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff next asserts that the trial court erred by failing to find that the children had an established custodial environment with her. Again, we disagree.

An established custodial environment exists with a party "if over an appreciable time[,] the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). In *Sabatine*, 513 Mich at 286, our Supreme Court reiterated that an established custodial environment depends

> upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence. [Quotation marks and citation omitted; alteration in original.]

The trial court may consider a child's custodial environment at a previous point to compare or contrast a child's environment over time. *Id*. at 289. But the trial court's ultimate inquiry for purposes of finding the existence of an established custodial environment is "whether such an environment continues to exist, or a new one exists, at the time of the trial court's custody determination." *Id*. at 289-290.

Plaintiff makes various arguments about taking more care of the children before she moved to suspend defendant's parenting time, and she asserts that evidence of abuse should not undermine evidence that she had more day-to-day involvement with the children. But a trial court's finding regarding the existence of an established custodial environment is a factual inquiry that we must affirm unless it is against the great weight of the evidence. *Safdar*, 342 Mich App at 175-176. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. at 176 (quotation marks and citation omitted).

Plaintiff's assertion that some evidence showed that she took a larger role in the children's lives after the divorce does not meet her burden on appeal to show that the trial court's findings

regarding the existence of an established custodial environment were against the great weight of the evidence. See *id*. at 175-176. Absent a showing that the evidence weighed significantly in the other direction, plaintiff has not established grounds to reverse the trial court's decision. See *id*. Because plaintiff has not met (or even addressed) her burden in her discussion of the evidence, we decline to further address plaintiff's claim. See *Ambs*, 255 Mich App at 650.


## V. BEST-INTEREST FINDINGS

Plaintiff further argues that the trial court erred when applying the best-interest factors. We disagree.

We must affirm a trial court's factual findings related to the best-interest factors unless they are against the great weight of the evidence, which requires a showing that the evidence clearly preponderates in the opposite direction. *Pennington*, 329 Mich App at 570.

Plaintiff first argues that the trial court clearly erred by failing to interview JT and FT at, or before, the de novo hearing. We first note that plaintiff never took the position in the trial court that it should interview the children or that it was error for the trial court to rely on evidence in the record about the children's reasonable preference. "On numerous occasions, this Court has denied a party the right to raise an appellate challenge when the party harbored an error as an 'appellate parachute.' " *Valentine v Valentine*, 277 Mich App 37, 40; 742 NW2d 627 (2007). Nevertheless, we briefly consider this issue for completeness.

Plaintiff cites *Quint* to support her claim of error. In *Quint*, ___ Mich App at ___; slip op at 3, 6, the trial court did not interview the six-year-old child to determine the child's reasonable preference under MCL 722.23(i), and instead chose not to consider the child's reasonable preference or make a finding under MCL 722.23(i). Because neither party raised the issue in the trial court, this Court reviewed the issue for plain error. *Id*. at ___; slip op at 7. The *Quint* Court ruled that the trial court plainly erred because the trial court was required to consider the child's reasonable preference. *Id*. at ___; slip op at 7-8.

In this case, the trial court considered the children's reasonable preferences as required by MCL 722.23(i) and did not run afoul of the holding in *Quint*. The trial court relied on a preference that was already plainly articulated in the record evidence. Plaintiff argues that the children's preferences were based on hearsay evidence in the FOC report, but the parties agreed that the FOC report should be admitted into evidence and that the trial court could consider it. After interviewing both children, the FOC investigator plainly stated that the children did not feel safe or loved in plaintiff's home, and evidence showed that the children were subject to various forms of abuse over a long period.

Plaintiff's assertion on appeal that a trial court must always reinterview the children in a custody hearing is also legally incorrect. No law mandates that a trial court interview a child, even when no previous interview occurred. *Maier v Maier*, 311 Mich App 218, 224-225; 874 NW2d 725 (2015). Rather, "an interview is merely one avenue from which to adduce a child's capacity to form a preference and the preference itself, and not the sine qua non from which that determination must be made." *Id*. at 225. In this case, the trial court had ample evidence to decide

the children's reasonable preferences; therefore, plaintiff is not entitled to reversal on this basis. See *id*.

Plaintiff also takes issue with the trial court's findings under most of the best-interest factors, but she merely asserts that the trial court should have weighed certain factors in her factor. Because plaintiff does not analyze this issue under the great-weight-of-the-evidence standard by showing that the evidence clearly preponderated in the other direction, she has not met her burden of proof on appeal, and, for that reason, we must affirm the trial court's best-interest findings.[1] See *Pennington*, 329 Mich App at 570.

We also note that the trial court made several findings on the record that plaintiff was "just [] not truthful with things, that her veracity is lacking, and I think that, as much as anything, is why this Court would weigh this in favor of Defendant." The trial court found that plaintiff did not give FT's counselor "a full picture of why she was seeing these kids," so "even through omission of information, that also results in veracity problems." The record evidence also supported the trial court's conclusion that plaintiff lied to the police when she was driving and she, Shane, and the children were stopped by police because she gave misinformation and omitted information when questioned by police. We defer to the trial court's special ability to determine the "veracity or lack thereof of [plaintiff]," and its impact on evaluating the best-interest factors under MCL 722.23. *Cassidy*, 318 Mich App at 476. From our review, it appears that plaintiff's lack of veracity influenced the trial court's ability to "trust what [plaintiff] is saying" throughout its bench opinion.

Furthermore, we would be remiss if we failed to address plaintiff's repeated claim that the evidence only showed a single incident of abuse in her home. Plaintiff's position on the issue of abuse is untenable because ample record evidence shows a lengthy history of violence, corporal punishment, and excessive physical discipline in plaintiff's home. It also ignores evidence of plaintiff's failure to protect the children from abusive partners, her attempts to coerce the children to lie about the abuse, and her choice to lie about and minimize Shane's abusive conduct instead of protecting the children. Plaintiff's assertion also fails to address the actual basis of the trial court's ruling, which was not based on a single incident of abuse as she claims.

---

[1] For this reason, we also reject plaintiff's assertion that the trial court should have applied the clear-and-convincing-evidence standard rather than reviewing the best-interest factors under the preponderance-of-the-evidence standard. In a custody decision, the trial court must weigh the statutory best-interest factors pursuant to MCL 722.23 and make findings and conclusions regarding each factor. *Grew v Knox*, 265 Mich App 333, 337; 694 NW2d 722 (2005). Because plaintiff did not show that the trial court's finding regarding the existence of an established custodial environment was against the great weight of the evidence, it was defendant's burden to establish by a preponderance of evidence that a change of custody was in the children's best interests. See *Pennington*, 329 Mich App at 571.

A party abandons a claim by failing to address the actual basis for the trial court's ruling. *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020).[2]

      Affirmed.


                    /s/ Kathleen A. Feeney
                    /s/ Stephen L. Borrello
                    /s/ Anica Letica

---

[2] Plaintiff also contends that the trial court should not have continued the no-contact order between Shane and the children. But, on the basis of this record, and as plaintiff concedes, "[a] parenting-time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent . . . ." MCL 722.27a(9). These terms or conditions may include "[r]estrictions on the presence of third persons during parenting time," MCL 722.27a(9)(c), or "[a]ny other reasonable condition determined to be appropriate in the particular case," MCL 722.27a(9)(i). Plaintiff cites no legal authority holding that a trial court must allow a parent to expose children to an abusive third party in a parenting-time order simply because the third party is married to a parent.

-11-