*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JUSTIN WILLIAM HORAZDOVSKY,

Plaintiff-Appellee,

v

AMANDA MAE HORAZDOVSKY,

Defendant-Appellant.

UNPUBLISHED
March 05, 2026
9:44 AM

No. 376242
Midland Circuit Court
LC No. 19-006692-DM

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

In this post-divorce custody dispute, defendant-mother appeals as of right the trial court's order changing primary physical custody of the parties' three children from her to plaintiff-father. We affirm.

## I. FACTS

The parties were married in 2006 and have three children. Plaintiff filed for divorce in 2019. In August 2021, the trial court entered the judgment of divorce and awarded defendant physical custody of the children while awarding plaintiff parenting time with the children. Thereafter, the children, NH, GH, and MH, often refused to attend parenting time with plaintiff. In addition, the children were struggling academically, and NH was failing to attend school regularly.

The trial court determined that defendant repeatedly had interfered with plaintiff's parenting time and ordered that plaintiff receive makeup parenting time in the form of 126 overnights. While the children were in plaintiff's care during the makeup parenting time, the children's attendance and grades at school improved, and plaintiff's relationship with the children also improved. At this time, the children were ages 10, 13, and 14. In October 2024, plaintiff sought primary physical custody of the children. After an evidentiary hearing and an in camera interview with the children, the trial court awarded plaintiff primary physical custody of the children and awarded defendant parenting time. Defendant now appeals.

## II. DISCUSSION

Defendant challenges the trial court's order determining that the best interests of the children in this case supports an award of primary physical custody of the children to plaintiff. Defendant also challenges certain evidentiary decisions of the trial court during the hearing held to determine the children's best interests.

### A. STANDARD OF REVIEW

In appeals arising from child custody disputes, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024). MCL 722.28 "limits the power of the appellate court to disturb a trial court's custody decision . . . ." *Sabatine*, 513 Mich at 285 (quotation marks and citation omitted).

We review a trial court's evidentiary decisions for an abuse of discretion. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). In child custody cases, an "abuse of discretion exists when the trial court's decision is palpably and grossly violative of fact and logic." *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994) (quotation marks and citation omitted). In addition, "[a] trial court necessarily abuses its discretion when it makes an error of law." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024) (quotation marks and citation omitted). A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Merecki v Merecki*, 336 Mich App 639, 645; 971 NW2d 659 (2021). We review questions of law for clear legal error. *Id*.

### B. MODIFICATION OF CUSTODY

Determinations of child custody are governed by the Child Custody Act of 1970, MCL 722.21 *et seq*. *Barretta v Zhitkov*, 348 Mich App 539, 550; 19 NW3d 420 (2023). Under the act, when determining a child custody dispute between parents, the best interests of the child control. *Kuebler v Kuebler*, 346 Mich App 633, 668; 13 NW3d 339 (2023). To modify an existing custody order, the trial court must initially determine whether proper cause or a change of circumstances exists, MCL 722.27(1)(c); *Barretta*, 348 Mich App at 552, which must be established by the moving party by a preponderance of the evidence, *id*. To prove a change of circumstances, the moving party must demonstrate that "since the entry of the last custody order, the conditions surrounding the custody of the child, which have or could have significant effect on the child's well-being, have materially changed." *Vodvarka v Grasmeyer*, 259 Mich App 499, 513; 675 NW2d 847 (2003). To prove proper cause, the moving party must demonstrate the existence of at least one of the statutory best-interests factors that has a significant impact on the child's well-being. *Dailey v Kloenhamer*, 291 Mich App 660, 665; 811 NW2d 501 (2011). The trial court may consider evidence predating the last custody order when determining whether proper cause exists. See *Vodvarka*, 259 Mich App at 514-515.

If the moving party establishes that proper cause or a change of circumstances exists, the trial court then determines whether there is clear and convincing evidence that modification of the child's established custodial environment is in the child's best interests. See *Mitchell v Mitchell*,

296 Mich App 513, 518; 823 NW2d 153 (2012). If an established custodial environment does not exist, the moving party must demonstrate by a preponderance of the evidence that the modification of custody is in the child's best interests. *Sabatine*, 513 Mich at 286. An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). The trial court may also consider the child's age, the physical environment, and the permanency of the parent-child relationship. See *id*.

To determine whether the moving party has demonstrated under the applicable burden of proof that modification of the child's custody is in the child's best interests, the trial court evaluates the child's best interests under the statutory factors set forth in MCL 722.23 as follows:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

In this case, the trial court determined that plaintiff had demonstrated proper cause or a change of circumstances warranting revisiting the issues of custody and parenting time. The trial court found that defendant had a history of denying plaintiff parenting time with the children, requiring the trial court to intervene and hold defendant in contempt. The trial court also found that Children's Protective Services (CPS) had become involved after reports of domestic violence in defendant's home involving defendant's then-boyfriend who was living at defendant's home. In addition, the children were frequently absent from school and were receiving poor grades, and one of the children, NH, had been petitioned into the trial court for truancy. The trial court also found that an established custodial environment existed for the children with both parents and that plaintiff was required to demonstrate by clear and convincing evidence that modification of the children's physical custody was in the best interests of the children.

The trial court then evaluated the children's best interests in light of the statutory factors of MCL 722.23. The trial court found that the parties were even on factors (a), (e), (f), and (g), while plaintiff was favored under factors (b), (c), (d), (h), (j), and (k). The trial court stated that it also considered the preferences of the children under factor (i). The trial court found that factor (l) was not relevant. The trial court explained its finding under each factor, emphasizing that the evidence demonstrated that plaintiff's more structured parenting time and stable family relationships resulted in the children's increased academic participation and success. The trial court also noted defendant's failure to facilitate the children's relationship with plaintiff while the children were in her custody. Based upon its findings, the trial court determined that it was in the best interests of the children that plaintiff be awarded physical custody of the children and defendant be awarded reasonable parenting time.

## 1. HEARSAY

Defendant argues that during the best-interests hearing, the trial court erred by allowing plaintiff to introduce school-attendance records for the children under MRE 803(6), the business-records exception to the hearsay evidence rule, without the testimony of a records custodian. We agree that the trial court erred but conclude that the error was harmless.

With certain exceptions, the rules of evidence apply in child custody disputes. *Kuebler*, 346 Mich App at 654. Generally, all relevant evidence is admissible. *Id*. at 654-655, citing MRE 402. Hearsay evidence, however, is inadmissible unless it falls within an exception provided by the court rules. MRE 802; *Kuebler*, 346 Mich App at 655. Hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c).

The "business-records exception" to the hearsay rule found in MRE 803(6) allows for the admission of a record compiled and kept in the course of regularly conducted business activity when authenticated by the custodian of the record. MRE 803(6) provides that evidence not excluded by the rule against hearsay includes

A record of an act, transaction, occurrence, event, condition, opinion, or diagnoses if:

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with a rule prescribed by the Supreme Court or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Thus, for a record to be admissible under this exception, the requirements of MRE 803(6) must be shown by a custodian or other qualified witness with sufficient knowledge of the business involved and its regular practices to be able to prove the first three requirements. In this case, the trial court permitted the children's school attendance records to be introduced into evidence without plaintiff authenticating the records with the testimony of a qualified witness. Plaintiff testified that he knew how to access the children's attendance records, but he did not know how the school made or kept the records. Because plaintiff lacked the qualifications necessary to testify to the elements of MRE 803(6), the trial court made an error of law when admitting the attendance records.

Under the circumstances, however, the error was harmless. The purpose of the introduction of the records was not to pinpoint specific absences, but to demonstrate that the children failed to attend school regularly while in defendant's care, and that their attendance improved while in plaintiff's care, a point that the parties do not dispute. Rather, the parties disputed why the children had attendance problems while in defendant's care, and why those problems abated after the children began living with plaintiff. Because defendant does not dispute the content of the attendance records, defendant has not demonstrated that the introduction of the records was outcome-determinative.

## 2. LAY OPINION TESTIMONY

Defendant also contends that the trial court erred by allowing plaintiff to testify that the children played video games online after 9:00 p.m. while at defendant's home because plaintiff had observed that someone was using the children's video "game tags" at that time. Defendant argues that plaintiff did not have personal knowledge about who was using the game tags and therefore should have been precluded from testifying on the topic as a lay witness.

Under MRE 602, a lay witness may testify only regarding a matter of which the witness has personal knowledge. MRE 701, however, permits a lay witness to provide opinion testimony

if it is "rationally based on the witness's perception" and is "helpful to clearly understanding the witness's testimony or to determining a fact in issue." See *Airgas Specialty Products v Michigan Occupation Safety and Health Administration*, 338 Mich App 482, 516; 980 NW2d 530 (2021) (referring to the prior version of MRE 701). However, the testimony of a lay witness may not be based on "scientific, technical, or other specialized knowledge" within the scope of MRE 702, which relates to expert witness testimony.

Here, plaintiff was not qualified as an expert, and therefore the admissibility of his testimony is governed by MRE 701. Plaintiff testified that he saw that the children's online gaming accounts appeared to be active after the children's supposed bedtimes while at defendant's house, and he assumed that only defendant could have been using those accounts if the children were indeed in bed. Plaintiff had personal knowledge of whether he saw the children's video game tags in use at a particular time, but plaintiff then offered his lay opinion that the use of the video game tags indicated that the children, or someone else at defendant's home, was playing the video game at that time. Arguably, plaintiff's opinion required scientific, technical, or other specialized knowledge, and therefore was inadmissible under MRE 701.

Plaintiff's testimony, however, made clear that plaintiff was making an assumption based upon a logical deduction arising from an uncontested fact. Defendant argues that there could be other explanations for why the accounts appeared online, but did not make a record below to support alternative explanations. Moreover, the role of this information in the trial court's decision appears to have been minimal; the trial court focused instead on the children's academic success while in plaintiff's care and defendant's failure to facilitate parenting time with plaintiff when the children were in her care. We conclude that any error in the admission of plaintiff's lay opinion that he believed that the children were playing video games after their appointed bedtimes was harmless.

### 3. EVIDENCE OF PAST EVENTS

Defendant contends that the trial court erred by precluding her from testifying about domestic violence that plaintiff perpetrated during the marriage on the basis that the events predated the judgment of divorce. Again, we agree that the trial court erred by excluding the evidence in question but conclude that the error was harmless.

As discussed, before modifying a custody order, a trial court must find proper cause or a change of circumstances. MCL 722.27(1)(c); *Barretta*, 348 Mich App at 552. The change of circumstances must have occurred after the entry of the last custody order. See *id*. at 514. However, with regard to proper cause, the trial court is not barred from considering evidence that predates the entry of the last custody order. See *Vodvarka*, 259 Mich App at 514-515. In addition, the trial court is not precluded from considering all relevant factors on the record, and the best interests analysis is not restricted only to events that occurred after the entry of the last custody order.

In this case, defendant attempted to introduce testimony about past domestic violence perpetrated by plaintiff for the purpose of explaining the behavior of the children after the judgment of divorce. The trial court did not determine that the evidence was irrelevant, but precluded defendant from introducing the testimony apparently solely because the domestic

violence occurred before the previous custody order was entered. In doing so, the trial court erred. However, the trial court permitted defendant to make a record regarding the evidence and defendant did not avail herself of that offer. The record shows at least generally the facts to which she would have testified, but defendant only vaguely alludes to the relevance of those facts. Here, any error by the trial court in excluding the evidence in question was harmless. Our review of the record indicates that it is more probable than not that the error was not outcome-determinative. See *PC v JLS*, 346 Mich App 233, 242; 12 NW3d 29 (2023).

### 4. BEST INTERESTS

Defendant also contends that the trial court erred in its factual findings regarding the best interests of the children. We again conclude that any error in this regard was harmless.

The trial has discretion to give differing weight to each of the best-interest factors, *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008), and this Court does not substitute its judgment for that of the trial court on questions of fact "unless the factual determination clearly preponderates in the opposite direction," *Sabatine*, 513 Mich at 284 (quotation marks and citation omitted). In addition, erroneous findings under the best-interest factors can be harmless if the remaining factors support the trial court's custody decision. See *Maier v Maier*, 311 Mich App 218, 227; 874 NW2d 725 (2015). In this case, the parties do not dispute the trial court's finding that there was an established custodial environment for the children with both parents, that a change in custody would alter that established custodial environment, and that the appropriate burden of proof was clear and convincing evidence.

Defendant challenges the trial court's finding that MCL 722.23(b), which considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any," favored plaintiff. Defendant argues that the trial court overlooked that she tried to make the children attend school but was unsuccessful. Despite her testimony in that regard, the trial court did not clearly err by finding that the children's school attendance and grades improved while living with plaintiff, which supports a finding that plaintiff was better able to further the children's education. In addition, although plaintiff agreed that he had a poor relationship with the children before his makeup parenting time, he also testified that the relationship had improved dramatically. Plaintiff acknowledged that there were some difficulties between the children and his wife's children, but he testified that those issues also were improving. The trial court was permitted to credit that testimony, and therefore did not clearly err by finding that this factor favored plaintiff.

Defendant also challenges the trial court's findings under MCL 722.23(c), which considers "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care[.]" The trial court's factual finding that defendant "appears not to have given any consideration for allergy testing despite the fact that Mother has 10 cats living in the home with six litter boxes and the children are constantly sick with symptoms consistent with allergies" is contrary to the evidence. There was no indication that the children actually have allergies to cats, defendant testified that a doctor told her that the children did not have allergies, she testified that she tried giving the children allergy medication, and she also testified that the children had allergic reactions to things such as medications or fleas for which

she obtained medical care. Plaintiff identifies no evidence that contradicts defendant's testimony and, therefore, the trial court's factual findings under factor (c) are clearly erroneous.

Defendant next challenges the trial court's finding that MCL 722.23(d), which considers "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," weighed in favor of plaintiff. The suitability of the children's environment is an appropriate consideration under factor (d). See *Brown v Brown*, 332 Mich App 1, 20-21; 955 NW2d 515 (2020). Here, the trial court was concerned that defendant allowed a boyfriend to live in the home for several months while the boyfriend committed domestic violence, following which CPS became involved and opined that the domestic violence might have caused the children's truancy issues. Although the boyfriend no longer lived in the home, defendant continued contact with him. Defendant points out that there was no evidence that the boyfriend did anything other than cause property damage. We conclude that the trial court erred by weighing this factor in favor of plaintiff. There was no demonstration that the alleged domestic violence by the boyfriend resulted in the children's truancy issues. To the extent the trial court determined this factor on that basis, its determination was unsupported by the evidence.

## 4. DOMESTIC VIOLENCE

Defendant lastly challenges the trial court's findings under MCL 722.23(k), which considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." In contrast to the discussion above, factor (k) expressly does not consider whether a child was a victim or even aware of the domestic violence. The trial court therefore reasonably could be concerned that defendant remained in contact with her former boyfriend given his violent behavior.

Defendant argues that the trial court improperly discounted plaintiff's history of perpetrating domestic violence. We agree that the trial court improperly excluded the evidence of plaintiff's prior abusive conduct when weighing this factor. Nonetheless, the trial court properly considered defendant's continued contact with a partner who had exhibited violence in her home. However, even if this factor were weighed evenly as to the parties, the trial court's determination of the other factors provides ample support for the trial court's decision to modify the previous custody order.

To summarize, although the trial court erred regarding certain of the best-interest factors, the errors were harmless. Even if the factors in question were weighed as neutral between the parties, the factors were not given great weight by the trial court and ample evidence noted by the trial court regarding the remaining factors support the trial court's decision. The trial court's decision to modify custody relied primarily on plaintiff's ability to address the children's school attendance and improve their academic performance. In addition, the evidence of the change in the children's attitudes toward plaintiff during and after his makeup parenting time supports the trial court's conclusion that the children's past reluctance to visit plaintiff was the result of defendant's interference.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel